[Crim. No. 664. In Bank.—May 31, 1901.]

## THE PEOPLE, Respondent, v. VERNEA SHEARS, Appellant.

CRIMINAL LAW—HOMICIDE—EVIDENCE—DIAGRAM BY WITNESS OF SCENE OF HOMICIDE—POSITION OF WAGONS.—Upon a trial for murder, a witness for the people, who arrived upon the scene of the homicide a few minutes after the killing, while the body of the deceased was still lying where he had fallen, may be allowed to illustrate his testimony by a diagram of what he witnessed at the scene of the homicide; and the fact that the diagram illustrated the then position of certain wagons, from one of which it appears that the defendant took a gun at the time of the shooting, is not objectionable, notwithstanding it may be surmised that the wagons had been moved.

Id. — Objections Going to Conclusiveness of Evidence. — Objections to evidence relative to the position of the wagons, the condition of the hat of the deceased, and the bruises appearing on his body, after the homicide, go only to the conclusiveness of the evidence, and not to its relevancy.

Id. — Declaration by Defendant after Killing — Malice. — A declaration by the defendant, made several hours after the killing, to the effect that, as for killing the deceased, he cared no more for that than for killing a jack-rabbit, was admissible against him upon the charge of murder, as tending to show malice.

Id. — Consciousness of Defendant at Time of Homicide — Repetition of Conversation Heard — Insufficient Objection to Question. — Where defendant claimed to have been stunned and rendered unconscious of his acts at the time of the shooting, by a blow on his head, from the deceased, with the loaded butt of a whip, which knocked him down,, but there was evidence that defendant afterwards repeated a short conversation which occurred in his hearing immediately after the blow, and the district attorney asked a hypothetical question, which assumed that a long conversation was heard and repeated by the defendant, an objection thereto, based only on the ground that there was no evidence that defendant had conversed with anybody, was properly overruled.

Id. — Improper Remark by District Attorney — Action of Court not Invoked. — A remark by the district attorney, to the jury, that it never occurred to him that the defendant was dazed, and that he had seen him the next day, was improper; but where the defendant did not invoke the action of the court to instruct the jury that it was improper, and to disregard it, but merely excepted to the remarks of the district attorney, the impropriety is not ground for reversal of the judgment upon conviction of manslaughter.

Id. — Instructions — Refusal of Requests Covered by Charge. — It is not error to refuse to give instructions requested by the defendant, the doctrine of which is fully and clearly stated in the charge of the court.

Id. — Modification of Requested Instruction. — Where a requested instruction, as asked for, might properly have been refused, the defendant cannot complain that it was given with a proper qualification.

Id. — Instruction as to Defendant's Testimony — Striking out Inapplicable Parts — Reasonable Doubt as to Self-defense. — Where the testimony of the defendant tended to show that the killing was involuntary, but did not tend in any degree to prove a killing in self-defense, it was proper to strike from a requested instruction, as to the consideration to be given to his testimony, an abstractly correct but inapplicable part of the instruction, stating that "if it raises a reasonable doubt in the minds of the jurors as to whether the killing was or was not justifiable, he is entitled to an acquittal, though his testimony be uncorroborated."

ID.—INSTRUCTION AS TO DANGER OF GREAT BODILY INJURY—MODIFI-
CATION—IMMINENCE OF ACTUAL DANGER.—Where there was no
evidence of an apparent, but unreal, danger of injury to the defend-
ant from the deceased, a requested instruction, to the effect that the
danger to the defendant of great bodily injury from the loaded butt
of a whip held by the deceased, when used for the purpose of strik-
ing the defendant therewith a severe blow upon the head, would
constitute a ground of justifiable homicide, is properly modified by
adding that "it should appear, however, that defendant was
actually resisting an attempt to murder him, or an assault on
him with a deadly weapon likely to produce great bodily injury,
etc., and that such danger was imminent."

ID.—DAZED CONDITION OF DEFENDANT—PEN AND PENCIL MARKS
UPON REQUESTED INSTRUCTION GIVEN—DEFENDANT NOT INJURED.—
Where the defendant requested an instruction to acquit the defend-
ant, if the jury should find that when the defendant shot the de-
ceased he was in such a dazed and uncertain condition of mind,
produced by a blow upon his head, that he was not capable of exer-
cising ordinary judgment, or was not conscious of his acts, or in
a state of mind to consider his acts, or the consequences thereof,
and the judge at first decided to refuse it, but afterwards gave it,
with directions to the jury not to consider pen and pencil marks
constituting erasures therein, if it appears that such pen and pencil
marks left the instruction legible and intelligible, the defendant
could not have been injured thereby.

ID.—INSTRUCTION AS TO RIGHT OF DECEASED TO DEFEND HIMSELF—
FIRST ASSAULT BY DEFENDANT.—Where it appears that defendant
made the first assault upon the deceased with the whip, which the
deceased took from the defendant, and the defendant thereupon
immediately retreated toward his wagon, where deceased knew he
had a gun, and deceased was apprehensive of his purpose to get
the gun, it was proper to instruct the jury as to the right of the de-
ceased to defend himself against the defendant, who had made the
first assault.

APPEAL from a judgment of the Superior Court of River-
side County and from an order denying a new trial. J. S.
Noyes, Judge.

The facts are stated in the opinion of the court.

Gibson & Gill, and Thomas T. Porteous, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr.,
Deputy Attorney-General, for Respondent.

BEATTY, C. J.—The defendant was tried on a charge of
murder, and convicted of manslaughter. He appeals from the
judgment and from an order denying him a new trial. A

brief summary of the facts of the homicide will facilitate the discussion of such of the numerous assignments of error as require special notice.

The defendant and one McGaw had gone to the place of the killing for the purpose of getting a load of hay, and had with them, on their wagon, a loaded rifle. While the defendant was engaged in greasing his wagon, he was approached by the deceased, who accused him of having circulated reports injurious to a young girl. Defendant denied the accusation, and the deceased called him a liar, upon which defendant attacked him with the butt of a loaded whip. Deceased backed away, and in his retreat was struck once, and perhaps more than once, with the whip, but the blows do not seem to have caused any serious injury. He then succeeded in wresting the whip from defendant, who in turn retreated towards his wagon. When near his wagon, defendant was struck on the side of his head with the butt of the whip, the blow being severe enough to knock him down and cause a considerable flow of blood from a contused wound. The deceased was continuing to strike defendant with the whip, when McGaw interposed and endeavored to take the whip from him, but he resisted the effort, and while this struggle was going on, defendant crept under his wagon to the opposite side, arose, and snatching his rifle from the wagon, fired instantly, inflicting upon deceased a mortal wound.

This being the substance of the testimony for the prosecution, it established a very clear case of manslaughter, against which the only matter urged in defense was certain evidence to the effect that the defendant was or might have been so dazed by the stunning blow on the head, inflicted by the deceased, that he did not know what he was doing when he fired the fatal shot. The defense, in other words, was, that the killing was not volitional, but was caused by the wrongful act of the deceased in striking a blow which for the time deprived the defendant of his senses. This, at least, seems to have been the defense most relied on, though there was also an attempt to combine with it the somewhat inconsistent plea of self-defense.

In support of their appeal, counsel for defendant present more than thirty assignments of error, each of which is separately argued and insisted upon in their printed brief. The first sixteen points relate to rulings upon objections to the evidence, with respect to which it ought to be sufficient to say, that if any error was committed, it was trivial, and wholly

inconsequential. But counsel have pressed these objections so earnestly and with such evident good faith, that we feel obliged to notice a few of them by way of example.

The first of these objections relates to a ruling of the court allowing one of the witnesses for the people to illustrate his testimony by means of a rough diagram of the scene of the homicide. It appeared that he arrived upon the scene a few minutes after the killing, and the objection was, that he could not possibly indicate on the diagram the position of certain wagons, because one or more of them might have been moved after the killing, and before his arrival. The answer to this is, that the witness was not pretending to testify to the position of the wagons at the moment of the shooting, but only as to what he found on his arrival, while the body of the deceased was still lying where he had fallen, and that, certainly, was of the *res gestæ*. If the object of the evidence was to show the position of the wagons at the time of the shooting, it had at least a tendency to do so, although it could be surmised that they had been moved. The conclusiveness of such evidence is not a test of its admissibility. But, aside from this, it does not appear how the position of the wagons had the slightest bearing on the case. Whether they were four feet apart, or twenty feet apart, seems to us to have been utterly immaterial, and this observation is also pertinent to several of the other exceptions under this head.

An exception of somewhat different character was taken to a ruling allowing a witness to testify to the following language used by the defendant some hours after the killing: "I am sorry I got into this trouble; but as for killing George Warner, I don't care any more for that than I do for killing a jack-rabbit." This evidence was competent, and relevant to a material fact. The charge was murder, and the expression proved had a tendency to show malice.

The various objections to the evidence as to the condition of the hat of deceased, and the bruises on his body, relate, like those concerning the wagons, only to its conclusiveness, and not to its relevancy.

A hypothetical question asked by the district attorney assumed that defendant had repeated, some hours after the homicide, a *long* conversation which occurred in his hearing immediately after he was knocked down by deceased, the object apparently being to show that he was not stunned or deprived

of his senses by the blow.   Defendant objected to the question, upon the ground that there was no evidence to show that the defendant had any conversation with anybody.   There was evidence of a conversation, though a *short* one.   The objection, as it was made, was properly overruled.   Besides, the question was never completed, and the answer was unintelligible. The other questions asked this witness — Doctor Parker — on his cross-examination were entirely unobjectionable.

The district attorney, in his address to the jury, used this language: "It never occurred to me that the defendant was dazed, and I saw him the next day."   This was improper, but its effect would have been removed if the defendant had asked the court to instruct the jury that it was improper, and to disregard it.   He did not invoke the action of the court, but contented himself with excepting to the remarks of the district attorney.

The court did not err in refusing to repeat, at defendant's request, instructions to the effect that apparent danger is the same as real danger, as regards the right of self-defense.   That doctrine was fully and clearly stated in several of the instructions that were given.   Instruction 16, on this subject, was properly refused, for the additional reason that it was confusing and misleading.

The court, as a part of its charge to the jury, gave the following: "The defendant is entitled to a verdict of acquittal, even if you find he was not in a dazed condition of mind when he shot Warner, but was in full possession of his reason and judgment, if you also find from the evidence that he shot deceased under an honest belief that he was then in danger of great bodily injury from said Warner; and defendant would be entitled, also, to a verdict of not guilty, if the evidence creates a reasonable doubt in your minds as to whether the defendant did or did not, from the circumstances and the situation in which he then was, really believe that he was then in danger of great bodily injury from said Warner at the time he shot him."

This covers the substance of several of the defendant's requests to charge, which were denied by the court on the ground that they had been given elsewhere.

The court, at the request of the defendant, instructed the jury that he had himself testified in the case, and that his testimony should be fairly considered by the jury, but the court,

in giving this instruction, struck out the following clause: "And if it raises a reasonable doubt in the minds of the jurors as to whether the killing was or was not justifiable, he is entitled to an acquittal, even though his testimony is entirely uncorroborated." If the testimony of the defendant had tended in any degree to prove a killing in self-defense, the striking out of this clause of the instruction would have been erroneous, but on examination of his evidence we cannot find that the defendant makes any claim to have been acting in self-defense. He does not say that he saw or apprehended any danger at the time of shooting. His testimony is, that he recollects nothing from the time he was knocked down until the gun was taken from him after the shooting. This evidence tends to show that the killing was involuntary, not that it was justifiable.

The defendant requested the following instruction: "I also instruct you, that it is not necessary that the instrument, in order to be a deadly weapon, should be dangerous in itself, but whether it was or not, in contemplation of the law, depends upon whether it was a weapon or instrument likely to produce great bodily injury or death when used to strike a severe blow upon the head of another, at a place where such blow would be likely to produce great bodily injury; and if you find that George Warner did, during the quarrel between himself and the defendant, with no other provocation on the part of defendant than the striking of said Warner a blow or blows upon the legs, not likely to produce great bodily injury, and which did not produce such injury, strike the defendant a severe blow upon the side of the head with the loaded butt of a whip, at a place where such blow would or might be likely to produce great bodily injury to defendant, then and in such case I instruct you that such striking of said Warner by defendant would be an assault with a deadly weapon or instrument likely to produce great bodily injury, and a felony, and defendant had a right to claim the justification specified in section 197 of the Penal Code, which declares that homicide is also justifiable when committed by any person in either of the following cases: '1. When resisting an attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person.'" This the court gave, with the following addition: "It should appear, however, that defendant was actually resisting an attempt to murder him, or assault on him with a deadly

weapon likely to produce great bodily injury, or a felony, or to do some great bodily injury upon his person, and that such danger was imminent."

It is contended that it was error to make this addition to the instruction. We think the addition made by the court was a proper qualification of the instruction as requested. The court would have been justified in refusing it altogether, but the defendant cannot complain that it was given with a proper qualification. The only plausible objection to the words added by the court is, that they seem to require that the danger must be actual and imminent, to justify a killing in self-defense. But they do not have this effect, for they only qualify the hypothesis stated in the instruction itself, which is one of actual and imminent danger, as distinguished from apparent danger. The law of apparent danger was clearly given in other instructions; and even if it had not been given, the omission would have been unimportant in this case, for there was no evidence of an apparent but unreal danger.

The defendant requested the court to give the following instruction: "28. I further instruct you, that if you find that at the time the defendant shot George Warner, the defendant was in such a dazed and uncertain condition of mind, produced by the blow upon his head, that he was not capable of exercising the judgment of an ordinary intelligent man of his years, or was not conscious of, or in a state of mind to recognize or consider, his acts, or the consequences of his acts, then your verdict should acquit the defendant."

The judge first decided to refuse this instruction, and wrote underneath it: "Not given. Given in instruction 37. Noyes, Judge." He also drew his pencil through several of the lines, which were typewritten, and drew a pen across them vertically several times, and diagonally twice. Subsequently, he drew his pencil through all that he had written except the words, "Given. Noyes, Judge," and added these words: "Pen and pencil marks not to be considered by the jury. Noyes, Judge." In this condition the instruction was given to the jury on their retirement, after it had been previously read to them. Defendant contends that the instruction was rendered unintelligible by the marks upon it, and that he was thereby injured. There is a photographic copy of the instruction in the record as handed to the jury. It remains perfectly legible and intel-

ligible, and we think that the manner in which it was first refused and then given—the evidence of which it bears upon its face—was really more calculated to draw the attention of the jury to the proposition it contains than if it had been allowed in the usual manner.

We find no objection to any of the instructions given by the court of its own motion. Those taken from the Hecker case were proper and pertinent, in this view: When the deceased took the whip from defendant, he (defendant) immediately retreated towards his wagon, where deceased knew he had a gun, and the evidence shows that deceased was actually apprehensive that his purpose was to get his gun. This being the case, it was proper to instruct the jury as to the rights of deceased in defending himself against one who had made the first assault.

The foregoing exceptions are those which seem the most serious of the many which are discussed in the brief. We find them without substantial merit.

The judgment and order of the superior court are affirmed.

Garoutte, J., Van Dyke, J., McFarland, J., and Henshaw, J., concurred.