[Crim. No. 1168. Third Appellate District.—October 28, 1931.]

THE PEOPLE, Respondent, v. GEORGE BRIGGS, Appellant.

Howe, Hibbitt & Johnson and O. F. Meldon for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PRESTON, P. J.—The defendant George Briggs was convicted by a jury of a violation of the provisions of section 288 of the Penal Code. He made a motion for a new trial. The motion was denied and from the order denying a new trial and from the judgment of conviction he prosecutes this appeal.

The complaining witness was Edith Eifert, a girl of thirteen years of age. She and her sister, Iola Eifert, aged twelve years, had been in the care and custody of the defend-

ant and his wife for three years, when this charge against defendant was made. They were placed there by their father, in whose custody they had been awarded by the superior court.

The defendant was convicted solely upon the testimony of these two girls. Edith testified that defendant committed the lewd and lascivious acts complained of at 7:30 P. M., on a Saturday evening, in the month of January, 1931 (the exact date she could not recall), in defendant's bed, in his home at No. 3069 Fifth Avenue, in the city of Sacramento, in the presence of her sister Iola and defendant's wife, who were also at the time occupying the same bed; in other words, said four above-mentioned persons were all occupying the same bed when the lewd and lascivious acts were alleged to have been committed. She further testified: "He tried to put his privates in mine when he was on top of me and I screamed and cried and finally he got angry with me and he told me to go upstairs to bed, and I tried to get out of bed, and he caught holt of me. He turned the light on and then he told me if he ever caught me over to Arata's, he would give me the worst beating I ever had."

Her sister Iola testified that she was in the same bed at the time and saw the defendant commit the acts charged against him, and watched the performance about twenty-five minutes.

The testimony of these girls, relative to the lewd and lascivious conduct of defendant, was directly and emphatically contradicted, not only by the defendant himself, but also by Mrs. Briggs, the defendant's wife. Circumstances related by the brother of defendant also directly contradicted the testimony of the two girls. They all positively denied that the alleged acts of lewd and lascivious conduct were committed, and, also, related facts and circumstances occurring on the evening of the night in question, which, if true, would show that the story told by these girls was undoubtedly a fabrication.

The testimony offered by the defendant also shows that prior to the time these girls were placed with the defendant and his wife, they had both been exposed to demoralizing influences, and were, by no means, unsophisticated. They had formed habits of telling falsehoods, purloining money and other articles of value from stores and neighbors, and

continued these practices after coming into the home of defendant. They were frequently severely punished and upbraided by both Mr. and Mrs. Briggs for their misconduct. In fact, Edith admitted on cross-examination that she and her sister were given to lying and stealing and that they had been punished for these things by both defendant and his wife, and that Mr. and Mrs. Briggs had told them on many occasions "that if they did not stop lying and stealing they would be put in a convent".

The credibility of the story of these girls was further seriously impaired by the following written declaration of Edith, addressed, apparently, to her sister Iola, viz.:

"Edith Eifert

"March 3.

"*The convent not for me*
lets tell a bad lie on them they go to the jail and make them suffer boys banana pole

"EDITH R. EIFERT,
"3067–5th Ave."

On the bottom of the paper, written in lead pencil, is the following:

"I have important news to ask you.

"IOLA EIFERT."

With reference to this writing, the attorneys for appellant aptly say: "The purpose of the introduction of this written declaration being to establish a motive and a purpose formed to make a false accusation against the defendant and his wife. This motive being stimulated perhaps from an apprehension growing out of repeated threats of Mr. and Mrs. Briggs to send the girls to a convent, and stimulated partly from feelings of resentment towards Mr. and Mrs. Briggs because of scoldings and punishments previously received."

Edith denied that this document was in her handwriting, but testified that the words written at the bottom thereof in pencil, to wit: "I have important news to ask you", was in the handwriting of her sister Iola.

There were, however, presented and allowed in evidence numerous writings admittedly those of the witness Edith for comparison with the disputed writing above set forth, and we have had the original exhibits produced in this court and have carefully compared and studied the handwriting of

Edith Eifert, and if called upon to express our opinion as to whether or not the disputed document is in her handwriting, we would unhesitatingly say that it is.

After the case had been closed by both sides, the district attorney was permitted, over the strenuous objection of appellant, to reopen the case and have the complaining witness write, in the presence of the jury, in an attempt to corroborate her testimony that she did not write the above-mentioned note. This, we think, was prejudicial error.

The rule is well settled that a witness is not permitted to write his signature in the presence of the jury for the purpose of having the same compared with a signature purporting to be his, the genuineness of which he denies.

It would open wide the door for fraud if a witness were permitted to corroborate his own testimony by the preparation of specimens of his own handwriting for the purpose of comparison. (*Hickory* v. *United States,* 151 U. S. 303 [38 L. Ed. 170, 14 Sup. Ct. Rep. 334].)

In *United States* v. *Jones,* 10 Fed. 469, the defendant was accused of having used the mails to further a scheme to defraud. The evidence adduced by the prosecution was a letter alleged to have been written by the defendant and mailed by him to one Bates. At the trial, the defendant sought to introduce a copy of this letter written by him in the presence of the jury for comparison with the original, the purpose being to disprove the defendant's authorship of this letter. The offer was refused, the court saying: "In this there was no error. It is not allowable upon an issue as to handwriting, to put in evidence papers, otherwise irrelevant, merely for the purpose of enabling the jury to institute a comparison of the writing. . . . It has never been permitted . . . to introduce writings for the mere purpose of enabling the jury to institute a comparison of writings. To permit the practice here sought to be established would be to permit the defendant to make evidence for himself."

See, also, *Williams* v. *State,* 61 Ala., at page 40.

In this last case, the court said: "There are cases in which a witness denies his signature, and may in *cross-examination* be compelled in the presence of the court to write his name for the purpose of comparison. This may fall within the latitude of cross-examination, and whenever permitted, in that examination, the signature so written becomes a part

of that examination. But it would open too wide the door for fraud, if a witness were allowed to corroborate his own testimony by the preparation of specimens of his writing for the purpose of comparison. By design a correspondence with, or departure from the disputed writing could be fabricated; and whether there was such design, is an enquiry with which the jury should not be embarrassed.''

We deem it unnecessary to discuss the other contentions made for a reversal of the judgment.

If the story told by these two girls is true, it imputes to defendant an unthinkable depravity and ungovernable sexual passion and attributes to Mrs. Briggs, the wife of defendant, a tolerance of acts and depravity and infidelity on the part of her husband, utterly opposed to every known human impulse of womankind, and not only stamps them both as perjurers, but brands as false every other fact and circumstance admitted in evidence on the part of defendant. The record does not admit of any such conclusion.

We are not unmindful of the rule that the weight and sufficiency of the evidence were questions to be determined by the jury, but the circumstances surrounding the lewd and lascivious conduct as detailed by Edith Eifert as having taken place in the bed at the time occupied by defendant and his wife and her sister, is so incompatible with human conduct, and the whole story told by both girls is so inherently improbable, we think, after a careful examination of all the evidence, that the erroneous admission of the testimony above mentioned, and the other errors complained of, resulted in a miscarriage of justice, and the judgment and the order denying a new trial should be reversed, and it is so ordered.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 12, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1931.