[Crim. No. 3491. In Bank.—February 23, 1932.]

THE PEOPLE, Respondent, v. RAYMOND C. WEST, Appellant.

Orrin J. Lowell and Burton L. Walsh for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant was accused of murder by information filed against him by the district attorney of the county of Sacramento. On arraignment he stood mute and refused to enter a plea to the charge made against him in the information. Thereupon, the court entered for him a

plea of not guilty. He was tried by a jury and found guilty of murder in the first degree without recommendation as to the penalty. Upon this verdict it was the duty of the court to pronounce the extreme penalty, which it did. On appeal his counsel assails the judgment of conviction and asks for its reversal upon the following grounds: Errors of court in the selection of a jury, errors of court in the trial, and misconduct of the district attorney.

Before passing to a discussion of these alleged errors, we will briefly outline the facts of the case. Raymond C. West was living in an apartment house in the city of Sacramento with a Mrs. Federolf. On Saturday, March 14, 1931, at about 6 o'clock in the evening, defendant, accompanied by Mrs. Federolf, left the apartment and went to a near-by garage where he rented an automobile. The two entered the automobile and the defendant drove a distance of two or three miles to the intersection of Thirty-third Street and Folsom Boulevard in the southeast portion of the city of Sacramento. Defendant parked his car on Thirty-third Street, about three car-lengths from the corner of Folsom Boulevard. There he left the car and while Mrs. Federolf remained in the car, the defendant proceeded to the Boulevard French Laundry located on Folsom Boulevard near Thirty-third Street. He remained there some five or ten minutes and then returned to the car. He had told Mrs. Federolf that he was going to the laundry to get his clothes which he had left there for the purpose of being laundered. He returned to the car without his laundry and on being asked by Mrs. Federolf regarding his laundry replied that it was not ready. The defendant then re-entered his automobile and drove back to the garage, from which he had rented the automobile about one hour before. After leaving the car at the garage he returned to his apartment, where Mrs. Federolf had preceded him and where they remained until Sunday evening, when, at about 10:30 o'clock, the two were arrested upon the charge of murdering Jean Burt at the Boulevard French Laundry on Saturday, the day before their arrest, on the occasion of their drive and defendant's visit to said laundry on said day. The evidence further shows that at about 6:30 o'clock Saturday evening, March 14, 1931, and only a few minutes after the defendant had left the

Boulevard French Laundry, Jean Burt was found leaning against one of the doors of his laundry with a bullet wound through his body, as a result of which he died two days later. He was immediately taken to a hospital in Sacramento, where on Monday following the defendant was brought before him and he, in the presence of the defendant, stated that the defendant robbed him of money and some checks and shot him. Referring back to the occasion of defendant's arrest on Sunday night, the arresting officer testified that the defendant exonerated Mrs. Federolf of any connection with the murder of Burt. He acknowledged that he had "pulled a bloomer" and shot Burt at the laundry the evening before. He further stated that he was sorry that he had not killed Burt, and at the request of the officer he produced a pistol, and in answer to a question by the officer, "Is this the gun used?" replied, "Yes." He at the same time turned over to the officer some nine dollars in money, which he said was what was left of the money taken from Burt and that he had torn up the checks and thrown them down the lavatory. After his arrest and in answer to questions by the district attorney as to why he shot Burt, the defendant stated that when he entered the laundry on the evening of the shooting Burt was at a small table in the office of the laundry. On the table were money and checks and Burt had either just finished counting them or was about to begin counting them as the defendant entered the room. Defendant stated that he walked up to Burt and told him he wanted the money; that Burt replied, "You can't have it, you get out of here"; that the defendant said, "Never mind arguing about it"; thereupon Burt reached for the money on the table and the defendant did also; that defendant grabbed for the money with his left hand and at the time had a gun in his right hand; that in the struggle which followed the gun in defendant's hand was discharged. A feeble attempt was made by the defendant to show that the discharge of the gun was accidental, as he replied in answer to a question by one of the officers as to how he came to shoot Burt, "Well, the safety was evidently off the gun." No claim is made that Burt was not killed by this shot from defendant's gun. This gun was owned either by the defendant or Mrs. Federolf. It was kept by them in their

apartment, and after the defendant secured the rented car from the garage on Saturday evening he and Mrs. Federolf drove back to the apartment, where Mrs. Federolf left a dress which she had purchased just before going to the garage and the defendant procured the gun, placed it in his pocket, and carried it with him to the laundry. The evidence shows that the defendant knew Burt, and that some four or five years before he had worked for Burt in the laundry as a bookkeeper, but that owing to the defendant being short in his accounts, he was discharged. Defendant stated, however, that he had no ill will toward Burt on account of their differences and that he did not go to the laundry on the occasion when the shooting occurred for the purpose of settling any grudge that he had against Burt. There was some evidence that about the time of the shooting of Burt by the defendant the latter had drunk quite freely of intoxicating liquor, but most of the drinking was done after the shooting and not before. Yet the evidence does show that the defendant had a few drinks the day of the shooting and before he went out to the laundry. However, there is nothing in the evidence of a convincing character to indicate that the defendant was to any perceptible extent intoxicated at the time he had his encounter with Burt at the laundry. There is practically no evidence that the defendant made any attempt to escape after the shooting or to conceal his identity, except that during the evening after the shooting he did have Mrs. Federolf go to the drug-store and purchase some hair dye, which he used later in the evening to dye his hair, which was naturally blond, a dark brown color. Yet after making this change in the color of his hair, he remained in Sacramento, where he was comparatively well known and in the apartment, where he had resided for over two weeks. It is true that he registered under an assumed name, but there is little evidence to connect this act with any purpose on his part to take the life of Burt or to escape detection thereafter. On the evening of the shooting he and Mrs. Federolf took a walk at about 9 o'clock, and while on their walk the defendant bought a copy of a local paper which contained an account of the shooting of Burt, with the statement that the defendant was suspected of being the person responsible for the deed. He then, so he says, for

the first time told Mrs. Federolf that he had shot Burt earlier in the evening when he visited Burt's laundry. No contention is made by the defendant that the evidence was not sufficient to justify the verdict of the jury. He relies for a reversal of the judgment solely upon errors above specified, which errors we will now proceed to discuss.

■ An examination of the alleged errors which the defendant claims were committed by the court during the impaneling of the jury convinces us that the defendant's contention in this regard is not well taken. Defendant under this division of his argument makes five assignments of error. In the first of these the court in the ruling complained of sustained an objection to a question asked by the defendant of a proposed juror, stating that he thought the form of the question was objectionable. Thereupon the defendant's counsel restated the question in a slightly different form, and it was answered by the talesman apparently to the satisfaction of the defendant. The difference between the question as first asked and the form in which it was answered was so slight that no injury could possibly have resulted to the defendant by the change in its form. The next two assignments of error were based upon the action of the court in sustaining objections to questions propounded by defendant to two proposed jurors, both of whom were later excused for cause by the court. ■ The fourth assignment went to the action of the court in sustaining an objection made by the district attorney to a question asked of a proposed juror by the defendant. The trial judge evidently misunderstood the question at the time of his ruling, for he later had the question read to him by the reporter, when he overruled the objection and permitted its answer by the proposed juror. The fifth and final assignment of error was based upon the action of the court in overruling an objection made by defendant to a question asked by the district attorney of a proposed juror. The juror answered the question, whereupon he was excused by the court upon the peremptory challenge of the prosecution. It is apparent that no error prejudicial to the rights of the defendant was committed by the court by any of these five rulings made during the impaneling of the jury.

Passing now to what the defendant terms "errors of court in trial", we find that the rulings of the court of which defendant complains involve either the rejection or reception of evidence, or the giving or refusing to give certain instructions. We have examined all of the rulings complained of by the defendant in which the trial court passed upon the admissibility of evidence during the trial. We find no error in any of these rulings. They involved matters of so slight consequence that a detailed discussion of them would be of no advantage whatever. ■ The principal complaint which the defendant makes regarding the instructions is directed first to the failure of the court to instruct the jury regarding the crime of murder in the second degree, and secondly, to the refusal of the court to give to the jury the following form of verdict: "We, the jury in the above entitled matter, find the defendant, Raymond C. West, guilty of murder in the first degree, and fix the punishment at death." There was no evidence in the case which would have justified a verdict of murder in the second degree. Murder committed in the perpetration of certain felonies, among them burglary and robbery, is murder in the first degree. (Pen. Code, sec. 189.) It was not error to refuse an instruction as to second degree murder where the evidence shows that, if guilty at all, the defendant was guilty of murder in the first degree. (*People* v. *Lapara,* 181 Cal. 66 [183 Pac. 545].) Neither was it error for the court to refuse to give to the jury the form of verdict proposed by the defendant and quoted above. The law on this subject is so well settled that no extended discussion of the subject is necessary. (*People* v. *Welch,* 49 Cal. 174; *People* v. *French,* 69 Cal. 169, 179 [10 Pac. 378]; *People* v. *Hall,* 199 Cal. 451, 455 [249 Pac. 859].)

Finally the defendant contends that the district attorney, both in his conduct of the trial proper and in his argument before the jury, was guilty of such misconduct as to prejudically affect the rights of the defendant and to deprive him of a fair and impartial trial. We will discuss what we regard to be the most important and serious incidents relied upon by the defendant as constituting misconduct on the part of the district attorney. ■ The defendant took the stand and testified as a witness at the trial. His testimony, however, was limited to his acquaintance with

Burt, the deceased, and a few other matters not pertinent at this time. He did not in his direct examination touch upon or refer in any manner to the shooting of Burt by himself or to any event transpiring on the day of the shooting, except that he did contradict the testimony of Mrs. Federolf, who stated upon her examination that the defendant and she on Sunday evening after the shooting while taking a walk purchased a local paper which gave an account of the shooting of Burt and that defendant then told her that he had shot Burt. Defendant's contradiction of her testimony consisted simply in that he testified that the two took the walk on Saturday, instead of Sunday, evening, and that he told her of his part in the shooting Saturday evening instead of Sunday evening. On cross-examination the district attorney began to interrogate the defendant generally as to his movements on Saturday, the 14th, but upon objection by the defendant, the court refused to permit him to do so. Following this ruling of the court, but after a brief examination by the district attorney on some other matter, the following proceeding took place: "Q. [By the district attorney.] Now, were you out to the laundry on March 14th, at all? Mr. Lowell [attorney for defendant]. If your honor please, counsel knows as well as he knows anything that that is not cross-examination. The Court: That is referring to the 14th, Mr. McAllister? Mr. McAllister: Yes, sir. The Court: Objection sustained. Mr. McAllister: I just wanted to get it in the record.'' This last remark of the district attorney is assigned as misconduct on his part. That this comment of the prosecuting officer was highly improper, there can be no question. No attorney, much less a district attorney, and particularly in an action in which a human life is at stake, should attempt to inject anything into the record of a case which is not proper and legal for the consideration of the jury. The conduct of the district attorney was clearly wrong, and under certain circumstances would demand a reversal of the judgment. In this case, however, we think the action was not prejudicial to any right of the defendant. He had told the officers on the night of his arrest that he was out to the laundry on Saturday, the 14th, and his statement to the officers was in evidence for the jury's consideration. Besides Mrs. Federolf had testified fully to the trip which the two took out to the laundry on that

day. For these reasons we are of the opinion that the remark of the district attorney, however censurable it may have been from an ethical point of view, did not seriously prejudice the defendant in any of his substantial rights.

 The next act of misconduct assigned by the defendant as prejudicial to his rights occurred during the argument of the case by the district attorney. It was the theory of the prosecution that defendant intentionally and deliberately killed Burt in order to prevent the latter from appearing as a witness against the defendant in case defendant should be accused of any crime in connection with his visit to the laundry on the afternoon of Saturday, the 14th. The evidence showed that the bullet causing Burt's death passed through his body two inches below the heart, and the district attorney argued that defendant aimed for Burt's heart for the purpose and with the intent of killing Burt instantly. In pressing this point before the jury the district attorney in his argument made the following statement: "But where did he [the defendant] strike? He struck for the heart—*did he tell you he didn't?*" It is contended that by this statement, and particularly by the use of the italicized portion thereof, the district attorney indirectly, if not directly, referred to the neglect or refusal of the defendant to take the stand in his own behalf. We have already noted the fact that while the defendant testified in the case, he did not either in his examination in chief or on cross-examination refer to his visit to the laundry or to the shooting of Burt. This being the condition of the evidence, it was highly improper for the district attorney to refer to the fact that the defendant had neglected to testify as to any incident growing out of the shooting of Burt. It is too well settled in this state to require any extended argument that such conduct on the part of a prosecuting officer is a violation of the rights of a defendant. (*People* v. *Mirandi,* 38 Cal. App. 178 [175 Pac. 653]; *People* v. *Waugh,* 30 Cal. App. 402 [158 Pac. 336]; *People* v. *Scott,* 66 Cal. App. 200 [225 Pac. 767]; *People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599]; *People* v. *Mayen,* 188 Cal. 237 [24 A. L. R. 1383, 205 Pac. 435].) However, it appears from the record in the case that the defendant made no objection to this comment of the district attorney, nor did he ask for any instruction from the court regarding the

comment or requesting that the jury should be directed to disregard it. The law applicable to this subject was by a recent decision of this court declared as follows:

"Where the error is such that its effect would be obviated by an instruction to the jury to disregard it and no such aid is invoked, the error cannot be complained of on appeal. (*People* v. *Shears*, 133 Cal. 154, 159 [65 Pac. 295]; *People* v. *Babcock*, 160 Cal. 537 [117 Pac. 549]; *People* v. *Wong Hing*, 176 Cal. 699 [169 Pac. 357]; *People* v. *Warr*, 22 Cal. App. 663 [136 Pac. 304]; *People* v. *Vaughn*, 25 Cal. App. 736 [147 Pac. 116].) Inasmuch as the court was not once, during the course of the argument to the jury, requested to instruct the jury to disregard the improper statements of the district attorney, and such an admonition would, doubtless, have been sufficient to cure any effect the remarks might have produced, the claimed misconduct in argument cannot be considered on appeal." (*People* v. *Nakis*, 184 Cal. 105, 116 [193 Pac. 92, 96].)

There is an exception to this well-recognized rule in cases where the comment is of such a character that the error could not be cured and the harmful result would not be obviated by a timely admonition or instruction to the jury. This exception applies only in extreme cases, example of which may be found in the following cases: *People* v. *Derwae*, 155 Cal. 592 [102 Pac. 266], where the defendant was on trial for burglary and the assistant district attorney attempted to inject into the case that the defendant had attempted to have illicit relations with his own daughter, and *People* v. *Simon*, 80 Cal. App. 675 [252 Pac. 758], where the prosecuting officer in his argument to the jury sought to arouse the prejudice of the jurors by reference to the race or nationality to which the defendant belonged. In these cases it was held that the injury to the defendant resulting from the conduct or comment of the district attorney was so harmful and prejudicial to the rights of the defendant, that an admonition from the court would not cure the injury which the defendant had sustained by reason of such misconduct. We are not convinced that the objectionable comment of the district attorney in the present case had such an effect upon the jury. On the other hand, it is our opinion that if the jury had been inclined to rely to any extent upon the argument of the district attorney that the de-

fendant had not testified to certain matters, it would, on being admonished by the court to that effect, have disregarded such argument and have followed the direction of the court. There is but slight difference in principle between the objectionable remark of the district attorney in this case and that considered by the court in *People* v. *Nakis, supra.* There the objectionable remark was a statement of the district attorney calling the attention of the jury to ''how little testimony the defendant gave''. That remark was held to be misconduct, but the court further held that ''an admonition would, doubtless, have been sufficient to cure any effect the remarks might have produced''. We think the same result would have followed in this case, had the attention of the court been called to the objectionable remark. This case is governed, therefore, by the general rule announced in the case of *People* v. *Nakis, supra,* and quoted above, and not by any exception thereto.

The other assignments of error discussed by the defendant need not be considered in detail. We have examined each of them, and are of the opinion that the defendant's rights were not prejudicially affected as the result of any of them, or by a combination of all of them.

The judgment is affirmed.

Langdon, J., Preston, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.