[Crim. No. 2002.   Third Dist.   Oct. 20, 1947.]

THE PEOPLE, Respondent, v. DENZIL L. DYE, Appellant.

Arthur De Beau Carr and Kenneth W. Donelson for Appellant.

Fred N. Howser, Attorney General, and Leonard M. Friedman, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Appellant was charged with and convicted by a jury of a violation of section 288 of the Penal Code. He made a motion for a new trial which was denied, and he has appealed from the judgment and order.

The first contention of appellant is that the evidence is insufficient to support the verdict. In that connection he points out discrepancies in the testimony of the prosecuting witness, Richard Hernandez, a boy 12 years of age, as well as testimony tending to impeach him. He also argues the weakness of the testimony of other witnesses called by the prosecution. An appellate court, however, is not concerned with this, but only with the question whether there is sufficient evidence to support the verdict. We have read the record and find that the boy's testimony was corroborated in part by his companion, Walter Lasek, and in part by Police Officer Fred Schroeder. Richard testified that he and Walter Lasek, aged 13 years, together went to the Liberty Theater in Sacramento about 7 o'clock in the evening of August 12, 1946, and occupied seats in the middle of the theater on the right-hand side about

three or four seats from the wall; Walter sat to the left of Richard. Later appellant came into the theater and sat at Walter's left; Walter then moved to the seat on Richard's right and appellant left his seat and walked into the aisle. A few minutes later appellant returned and sat to the left of and next to Richard and leaned over the arm-rest of the seat toward him and said something to the boy which the latter did not understand; then appellant crossed his legs and part of appellant's leg came upon the boy's leg between his knee and hip; the boy moved his leg away from appellant and the latter then uncrossed his legs and whispered to the boy twice, but the boy did not understand him; then appellant reached over and grabbed the boy's privates; the boy raised his leg and put his left foot on the chair so appellant could not do it any more. After appellant let go of the boy's privates the boy moved over as far as he could go and appellant put his hand on the boy's bottom; the boy pulled appellant's hand away and appellant grabbed the boy's hand and squeezed it. Richard told him to "let go of my hand," but appellant squeezed the hand more. The boy tried to get away, whereupon appellant let go of his hand, then got up and walked up the aisle. Two policemen in plain clothes came in and told the two boys to come outside. They talked together on the sidewalk, after which the boys returned to the theater. Appellant was then standing inside the theater near the entrance and the boys told the officers where appellant was standing; then the two boys resumed their seats, Walter sitting to the left of Richard. Appellant returned and took the seat next to Walter whereupon Richard climbed over the seats into the row ahead. Walter followed. After a few minutes both boys left for home.

Walter Lasek testified that he accompanied Richard to the theater on the evening in question, that they arrived about 7 o'clock and occupied seats on the right side about the middle of the theater; Richard sat to the right of Walter and the latter was nearest the aisle. Thereafter appellant came in and took the seat next to Walter and leaned on Walter's side of the seat toward him. Walter leaned away from appellant toward Richard, who was seated at his right; appellant whispered something to Walter which the latter could not make out; then appellant got up and went out whereupon Walter moved over on the other side of Richard, thus leaving Richard nearest the aisle; appellant returned and took the seat that Walter had vacated next to Richard. Walter said he was engrossed in the pictures and was not noticing either appellant or Richard, but

he did glance at Richard who "kept on moving over towards me"; appellant left his seat and the detectives came in and called the boys out; they talked to the officers on the sidewalk, then returned to the theater and took their seats. Appellant also returned and Richard saw him and climbed over the seats to the row ahead and Walter followed him.

Police Officer Fred Schroeder testified that on the evening of August 12, 1946, he was in the Liberty Theater about 8:15 or 8:30 o'clock and occupied a seat two rows behind appellant and one seat to the left of him. He saw Richard sitting in the seat on the right of appellant and Walter seated to the right of Richard; he was in the theater approximately 25 to 40 minutes and retained his seat for 30 minutes during which time he had appellant under his observation except when appellant went to the lavatory. Appellant was leaning almost half into Richard's seat and the more appellant would lean into Richard's seat the more the boy would move over. Appellant leaned over and whispered into Richard's ear, and he would say appellant tried to kiss the boy; that the boy pulled away and then appellant went way down in his seat, looked around and then put his leg over the boy's leg and took hold of the boy's hand. The boy jerked his hand away; appellant reached over and laid his hand on the boy's leg and the boy put appellant's hand down. Appellant then took hold of the boy's hand; the boy pulled his hand away and moved over; appellant got up and went to the lavatory and the witness tapped the boy on the shoulder and asked him to come out for a talk. In front of the theater the officer talked with the boys and then they returned to the theater. The witness also went back into the theater and sat behind appellant and the boys. He saw the two boys climb over the seats to the row ahead, whereupon appellant went back to the lavatory. Upon his return the officers placed him under arrest.

Manuel Saetes testified that he was night manager of the theater and came on duty that evening between 7:30 and 8 o'clock. On cross-examination by counsel for appellant he testified that appellant had tried to get into the theater previously on stubs that were old, and that he had kept his eye on him; that he had known appellant to come in two or three times a day; and that appellant had already seen the pictures that were being shown.

Any inconsistencies and contraditions developed in the examination of the prosecuting witness, and his credibility, were clearly matters for the consideration of the jury in determin-

ing the weight to be given to his testimony. (*People* v. *Carlson*, 73 Cal.App.2d 933, 939 [167 P.2d 812], citing *People* v. *Jackson*, 63 Cal.App.2d 586 [147 P.2d 94].) *People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758], also was a 288 case and in affirming the conviction, the court said:

"Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. . . . To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Cases cited.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."

There appears no reason why this court should interfere with the verdict of the jury. As we said in *People* v. *Jackson*, *supra*, at page 593, we must assume that the learned trial judge was satisfied with the verdict or he would have granted the motion for a new trial. We find no merit in appellant's first contention.

Appellant's second contention is that the district attorney was guilty of prejudicial misconduct during the trial of the case and in his argument to the jury.

The first instance relied upon is that after counsel for the defense had shown that the prosecuting witness had given contradictory testimony at the preliminary examination, the district attorney, on redirect examination, referred the witness to a different part of the transcript in an effort to obtain an explanation. Appellant objected, contending that the prosecution was attempting to impeach, and to cross-examine its own witness. A similar contention was made in *People* v. *Ferdinand*, 194 Cal. 555, 562 [229 P. 341], where the court said:

"Appellants complain that the court erred in permitting the prosecution to impeach its own witness. An examination of the record discloses the facts connected with the incident to which reference is made by appellants to have been that one of the witnesses presented by the prosecution was sought to be impeached by the defendants by calling her attention to certain testimony which she had given at the coroner's inquest over the body of the deceased, and which testimony was appa-

rently inconsistent with statements which she had made on her direct examination. On redirect examination, and as explanatory of the statements made by her on cross-examination, the prosecution directed the attention of the witness to certain other testimony given by the witness at the inquest. The rule is universal that such a right exists.''

The Ferdinand case was followed by this court in *People* v. *Kennedy*, 21 Cal.App.2d 185, 200 [69 P.2d 224]. Furthermore, the trial court concluded that the prosecution had failed in its effort to procure an explanation on the redirect examination and on motion of the defense struck it out. Therefore, any impeachment remained unaffected.

However, appellant complains that during the argument over the defense objection, the prosecutor said: ''. . . well, I hate to make a statement here, your Honor''; and appellant argues: ''It is self-evident that the district attorney by making some sort of veiled reference about hating to make a statement here confused and confounded the jury, the effect of which is and was prejudicial to the defendant.'' The record reveals that no objection was made to the statement and the court was not requested to admonish the jury to disregard it. Therefore, the point cannot be urged for the first time on appeal. It was incumbent upon appellant to ask for an instruction to the jury to disregard the alleged objectionable remarks of the prosecutor. (*People* v. *Hanks*, 35 Cal.App.2d 290, 302 [95 P.2d 478]; *People* v. *Wagner*, 62 Cal.App.2d 597, 601 [145 P.2d 646]; *People* v. *Greene*, 80 Cal.App.2d 745, 748 [182 P.2d 576].) We fail to find any prejudice to appellant by reason of this incident.

The next incident complained of is that the district attorney presented Walter Lasek as a witness over the objection of defense counsel. To the objection, made almost at the time the witness started to testify, the court said:

''I assume Counsel presents a witness to the Court in good faith, thinking that there is something relevant to the testimony that the witness may give, and when the time comes if there is nothing relevant you can move to strike,—proceed.''

After Walter Lasek testified as herein earlier recited, the defense moved to strike out his testimony, and the motion was denied. The argument is now made that: ''This testimony and the district attorney's introducing it was prejudicial in that it created in the minds of the jurors the idea that the boy was afraid something was going to be done to him by Dye, so he moved over away from Dye.'' It is probably true that

such was the reason why Walter moved over on the other side of Richard, and it occurred after appellant had whispered something to Walter which he did not understand and had leaned over into his seat. This was enough to justify Walter in moving away from appellant. The testimony given by Walter, as hereinabove recited, warranted using him as a witness, and in several respects he corroborated Richard. There is no justification for the complaint mentioned in this instance.

Appellant next complains that the prosecution was guilty of misconduct in the cross-examination of the sister of the prosecuting witness, who was called by defendant in an attempt to impeach Richard's testimony by showing that he had made statements to defendant's counsel at variance with the testimony he gave at the trial. By his cross-examination the assistant district attorney merely sought to show why the boy's story to defense counsel may have differed. We do not consider that such cross-examination was improper. In *Sichterman* v. *R. M. Hollingshead Co.*, 117 Cal.App. 504, 506 [4 P.2d 181], the court said: "There can be no question that where a party to an action has changed his testimony, the circumstances under which that change was made are admissible in evidence to explain and characterize his action in so doing, so as to enable the jury to judge whether the change was due to mere inadvertence or was part of a deliberate scheme of perjury." And in *People* v. *Slaughter*, 33 Cal. App. 365, 372 [165 P. 44], where it was sought to impeach the testimony of the prosecuting witness by letters and an affidavit in which she had stated that her charge against defendant was false, cross-examination by the prosecution to ascertain the circumstances under which the letters were written and the affidavit made was held proper. Also see 3 Wigmore on Evidence (3d ed.), p. 738.

It is next complained by appellant that the conduct of the deputy district attorney was prejudicial in that, on the cross-examination of defendant, he persisted in inquiring whether defendant had previously seen the pictures being shown. The transcript shows the following:

"[MR. MCDONELL] Q. Isn't it a fact, Mr. Dye, you were in that theater the day before?

"MR. DONELSON: We object to that on the same ground, immaterial.

"THE COURT: The objection is sustained.

"MR. MCDONELL: Isn't it a fact, Mr. Dye, that you had made a practice of going to the Liberty Theater because they

have a lot of cowboy pictures, and because those boys go to see cowboy pictures?

"MR. CARR: Same objection, and ask that the District Attorney——

"THE COURT: (Interposing) Same ruling.

"MR. DONELSON: We ask that the District Attorney be cautioned not to continue that line of questioning.

"THE COURT: Yes, I have ruled on that line of questions, Counsel should refrain from them."

It is particularly urged that the question whether defendant had made a practice of going to the Liberty Theater because they have a lot of cowboy pictures there, etc., was prejudicial. But as the record above recited reveals, defendant's objection was sustained, the conduct of the deputy district attorney was not assigned as error, and the trial court was not asked to admonish the jury. In *People* v. *Wilson,* 76 Cal.App. 688, 702 [245 P. 781], the court said:

"There is nothing in the record to indicate bad faith on the part of the district attorney, or that any of the questions were asked for the wanton purpose of raising a prejudice against either of the defendants. It frequently happens that in the heat of trial counsel ask improper questions, but inadvertences of that character are not alone sufficient to raise a presumption that the prosecuting officer was wilfully endeavoring to prejudice the accused in the eyes of the jury. Moreover, appellant did not assign the alleged misconduct of the district attorney as error."

Also see *People* v. *O'Donnell,* 11 Cal.2d 666, 671 [81 P.2d 939]; *People* v. *Vatek,* 71 Cal.App. 453, 468-469 [236 P. 163]. Furthermore, on cross-examination of Manuel Saetes, defendant's counsel brought out that the witness had known defendant to come in two or three times a day when he had already seen the pictures that were being shown.

Other questions asked by the counsel for the People are contended by appellant to have been prejudicial, but it does not appear that defendant's counsel requested that the jury be admonished to disregard them, or that such conduct was assigned as misconduct; and as for some of such questions, no objection was made. We deem it unnecessary to set them forth in detail.

Appellant also complains that in his argument to the jury the attorney for the prosecution was guilty of prejudicial misconduct. But here, again, defendant did not call for an ad-

monition to the jury to disregard the alleged prejudicial statements, therefore, they cannot be considered on appeal. (See *People* v. *West,* 215 Cal. 87, 96 [8 P.2d 463]; *People* v. *Shears,* 133 Cal. 154 [65 P. 295]; *People* v. *Routh,* 182 Cal. 561, 567 [189 P. 436]; *People* v. *Hanks, supra; People* v. *Wagner, supra;* 4 Cal.Jur. 10-Yr. Supp. (1943 Rev.) p. 916.)

Errors in the admission of evidence are also relied upon by appellant as prejudicial error. In the examination of police officer Schroeder the following occurred:

"WITNESS: A. He at that time leaned over and whispered in Richard's ear.

"MR. CARR: I ask that go out.

"THE COURT: Q. Now, did he whisper? A. He definitely whispered.

"THE COURT: It will stay in then,— Go ahead.

"A. (continuing) he was so close to the boy's ear that it looked to me like he tried to kiss the boy on the neck,——

"MR. CARR (interposing) I ask that go out, and ask the witness be admonished not to volunteer things of that kind.

"THE COURT: Q. Well, now did he try to kiss the boy?

"A. I would say he did, yes.

"THE COURT: It will stay in.

"A. (continuing)—At that time the boy pulled away. Then the defendant went way down in his seat like this (indicating),—at the time he was doing this he was looking around to see who was behind him, or who was next to him,——

"MR. CARR: I ask that go out.

"THE COURT: The 'looking around' will stay in; the rest will go out.

"WITNESS: A. He got down almost to this position (indicating) and put his leg over the little boy's leg, and put his hand down in this position; I observed that by standing up in my seat and looking down. At that time was the time he took hold of the little boy's hand, and he laid it on the boy's leg,— I observed all that."

If there was any error in permitting this testimony, it was cured on the cross-examination of the witness where the following occurred:

"[MR. CARR] Q. Did you hear Dye at any time whisper to the boy, or say anything to him?

"A. No, I didn't hear nothing.

"Q. Were you listening? A. Yes, I was.

"Q. Judge Lemmon asked you if he whispered when I made the objection, and you said yes he did,—how did you determine that? A. His lips were moving when he was up alongside the boy's ear.

"Q. You saw his lips moving? A. That is right.

"Q. Would you show the jury how his lips were moving at that time? (Witness demonstrates to jury with movement of lips.)

"Q. Like that? A. Yes, sir.

"Q. Was this an alleged love kiss, or whispering, or both? A. I would say it was both.

"Q. It was a whisper and a kiss at the same time? A. That is right."

It is therefore apparent that defendant's counsel brought out substantially the same testimony which he now complains was erroneously admitted. (*People* v. *Dollor*, 89 Cal. 513, 517 [26 P. 1086].)

It is next assigned as error that the court refused to strike out the testimony of Walter Lasek. It is argued that nothing appears therein that corroborates other testimony regarding the acts of defendant. We cannot say that Lasek's testimony did not, in some respects, corroborate the testimony of Richard. If it did not, we fail to see how it was prejudicial to appellant. In 10 California Jurisprudence 808, it is said that the tendency of modern decisions is to admit any evidence that may have a tendency to throw any light or give any weight, and to leave the question of the strength of such tendency or the amount of such weight to be determined by the jury. Also see *People* v. *Mooney*, 177 Cal. 642, 655 [171 P. 690].

Appellant also complains that the court erred in limiting the use of two photographs introduced by appellant, which show defendant and one of his attorneys seated in the seats in the theater occupied by Richard and defendant, the asserted purpose of such photographs being to demonstrate to the jury the impossibility of defendant's having assumed the poses testified to by Richard and the two police officers. Objection to two of the photographs was made on the ground that Attorney Donelson and Richard Hernandez were not of equal size, and also that the boy's testimony was that he was sitting on the edge of his seat. The record shows the court's ruling as follows:

"THE COURT: Now, I am in accord with Mr. Donelson as to the part of the testimony, the picture as relating to Mr.

Donelson,—the situation is far different than that which is testified to; however, insofar as the picture shows the posture, the different postures of the defendant seated in the seat, I think that is relevant and to that extent it is admitted.''

We cannot say that the court's ruling was error. These two photographs, as well as four others taken at the same time, were admitted in evidence, and the photographer who took them was permitted to testify at some length as to what it would have been possible for defendant to do or not to do while seated in the theater, as shown in the pictures. Photographs such as these are admissible for the purpose of illustration only, ''and not as evidence of what in fact occurred.'' See *People* v. *Clapp,* 26 Cal.App. 523, 527 [147 P. 469], and cases there cited; *People* v. *Lee,* 34 Cal.App. 702, 709 [168 P. 694]. And appellant was allowed all the benefit from them to which he was legally entitled, if not more.

Appellant next assigns as error the refusal of court to permit Albert Sessarago, principal of the school attended by Hernandez, to testify that the boy was mentally deficient and emotionally unstable, and that he ''had a proclivity for theft.''

As for the mental condition of the witness the court said in *People* v. *Champion,* 193 Cal. 441, 448 [225 P. 278]: ''A witness not affected by mental disease or mental derangement may be impeached only in the manner and for the reasons provided in sections 2051 and 2052 of the Code of Civil Procedure. (*People* v. *Harrison,* 18 Cal.App. 288, 296 [123 P. 200].) His testimony may not be impaired by the opinion of other witnesses that he is afflicted with a weak memory. That fact, if it be a fact, may and perhaps must be done by cross-examination. (*Ah Tong* v. *Earle Fruit Co.,* 112 Cal. 679, 682 [45 P. 7].)'' In the case last cited it was sought to prove by another witness that the witness Davis was a person of weak memory, but the rejection of such evidence was approved, the Supreme Court saying: '' [T]he memory of a witness not affected by mental derangement is not to be impeached by other witnesses in order to disparage his testimony; it must be done by cross-examination.'' Also see *People* v. *Mackey,* 58 Cal.App. 123, 127-128 [208 P. 135]. Appellant argues that the jury had a right to consider the mental condition of Hernandez, which is doubtless true, and this was urged upon them by appellant's counsel in his argument. That he is emotional and unstable was conceded by the deputy district attorney in his argument. But it does not follow that

appellant was entitled to produce a witness to testify as to his opinion that the boy was mentally deficient and emotionally unstable. As said in *People* v. *Champion, supra,* this must be developed by cross-examination.

It is further urged that defendant should have been permitted to call Albert Sessarago to testify as to Hernandez' "proclivity for theft." What the testimony of Sessarago would have been in this connection does not appear. Appellant argues that anyway he should have been permitted to so testify because defendant, apparently in an attempt to explain his conduct in the theater, testified that the boy had attempted to steal his wallet, which Hernandez denied; and that a showing that Hernandez had a "proclivity for theft" would have tended to support defendant's testimony. But defendant's testimony could not be so bolstered. Hernandez was not on trial, and his credibility as a witness could not be so impeached. See Code Civ. Proc., § 2051; *People* v. *Nichols,* 2 Cal.App.2d 99, 102 [37 P.2d 710]; 27 Cal.Jur. 132, 133. Appellant relies upon *People* v. *Briggs,* 117 Cal.App. 708 [4 P.2d 593], but that case did not involve the admissibility of evidence. It merely recites that there was evidence that the complaining witnesses were addicted to falsehood, which was admitted by one of them, and that their credibility was thereby impeached.

Finally appellant urges that the trial court erred in denying a new trial. But as we have arrived at the conclusion that the record does not reveal reversible error, and the motion for a new trial was predicated upon the grounds here urged for reversal, we cannot say that the court abused its discretion in denying such motion. See *People* v. *Sarazzawski,* 27 Cal.2d 7, 15-16 [161 P.2d 934].

Appellant has made other assignments of error. We have examined them all but find none of them meritorious or justifying further prolongation of this opinion. It seems highly improbable that the experienced and learned judge below could have made as many errors as appellant attributes to him; and the very fact that appellant has seen fit to assign so many errors, tends to indicate that he has, himself, little confidence in any of them.

The judgment and the order denying a new trial are affirmed.

Peek, J., and Thompson, J., concurred.