### GRIFFIN, Plaintiff-Appellant, v. RENKERT et al, Defendants-Appellees.

Common Pleas Court, Summit County.

No. 180351. Decided March 31, 1954.

Paul Weick, Kenneth Mason, Akron, for plaintiff-appellant.
Edward Erickson, Law Director, Akron, for defendants-appellees.

## OPINION

By WATTERS, J.

This matter is before the court upon an appeal by the appellant, John Griffin, an Akron City police officer, who was removed in early March, 1951, and which removal was affirmed by the Municipal Civil Service Commission, all under old §486-17a GC.

The appeal, of course, is upon the record and testimony before the Commission, and no trial de novo was had where evidence or further evidence was taken, as the Supreme Court finally determined, while this case has been pending, that no trial de novo can be had.

Until the decision of **Sorge v. Sutton (1953), 159 Oh St 574,** that question of procedure was in a state of confusion.

The mayor, who was also the safety director, charged the officer with some six or seven violations in great detail, involving dishonesty, failure of good behavior, insubordination, neglect of duty, violation of Civil Service Regulations, malfeasance, and failure to obey the police regulations.

But all charges grew out of the incident that the court will set forth in detail. Up to that time it is shown by the uncontradicted evidence, and conceded that the officer had been on the police force for nineteen years and eight months and had an excellent character and service record. Nothing to the contrary was claimed or even hinted at nor can it be

inferred. Also his right to retire on pension was but a few years distant.

The record of the evidence shows that on March 2, 1951, one Mose Avery pleaded guilty to two charges, to-wit, speeding and possession of lottery slips (number tickets). He was sentenced by Judge Zook of the Municipal Court to five days and costs on the former, and fifteen days and $150.00 fine and costs on the latter charge, the time part to run concurrently or together in the County Jail.

At that time the evidence shows that his counsel moved orally for a modification of said sentence requesting that it be cut down or at least the defendant would be released during certain hours so he could carry on his business as a pool room operator.

The judge took said motion under advisement for future ruling.

The evidence showed that over the years from 1937 the said Mose Avery had been convicted of possession of lottery tickets or like misdemeanors upwards of seventeen times, but had never been sentenced to serve time except on a few occasions of not more than three days (See City's Exhibit B), nor had he been compelled to pay any considerable fine.

This time he got·fifteen days and $150.00 in fine. The evidence does not show that he was "hot" as the Commission found or a "big shot" in the numbers operations. His past sentences would show he was a "small fry" writer.

On the night of said day, to-wit, March 2, 1951, Officer Griffin received a phone call from someone that Mose Avery wanted to see him, and Griffin, who was then a member of the detective force assigned to the subversive squad, which investigated Communism and like matters, went to see him in jail.

Mose Avery asked Griffin to see what he could do for him, whereupon Griffin, who testified he had used Avery in the past in detective work for information and tips, said he would try to help him if Avery, who was active in certain colored circles, would aid him in his subversive work in checking Communism among such group.

Following that, the next day, the officer went to Judge Zook's chambers and, according to Judge Zook's testimony, informed the judge that he believed Avery could be of assistance to him in his work on the subversive squad in checking Communistic activity and asked the court to release him during certain hours for said purposes. (See Judge Zook's testimony on pages 2 & 3, etc., of the record.)

Griffin also claims he told the Judge of Avery's past assistance to him as an informer or "stool pigeon" so-called in his

work as a detective. There is no doubt that he did because Sgt. Jack Carlton, Griffin's superior, who went along on the March 6th or second visit to the Judge, says in his report to the Chief that he heard Griffin at that time so tell the judge and that he, Carlton, knew Avery had been helpful in said respects to Griffin in the past, and that he, Carlton, so informed the judge. He also stated in his report that he knew Avery had asked Griffin to help him.

The Judge in his report to the Mayor (see his letter, Pros. Exhibit A) says that he did not remember Griffin saying anything about Avery's past aid as a stool pigeon, but says he interpreted Sgt. Carlton's presence with Griffin as his joinder in the request for modification of Avery's sentence. That was natural as Sgt. Carlton was Griffin's superior officer and knew what the purpose of the second visit was without question in his own admission in his report to Chief Lynett.

In his letter to the Mayor, Judge Zook recognized the necessity and practice in detective work of working with so-called stool pigeons and informers when he wrote:—

"In fairness to the officers, however, I should remind you that detective work must frequently be carried on through stool pigeons; that such persons usually are not admirable characters and will not work through patriotic motives, and that since our police department is seldom in a position to employ such persons for hire they must secure their help by doing such favors as may from time to time be in their power. I have in the past attempted to co-operate with the police department along these lines and shall do so again when it seems to me to be proper."

See also The New Century Dictionary, 1927, distributed by Collier & Son, New York City, where the term "stool pigeon" is defined as follows:—

"One who acts as a spy for the police."

In this court's opinion, Judge Zook's statement to the Mayor was a frank and candid recognition of the situation as he knows it to be from his many years of experience on the Municipal Court.

On the first visit to the judge, he and the judge went over to the clerk's office to see the arrest tickets and journal entries of the cases, and while over there ran into the Beacon Journal reporter who was informed that it was under contemplation to let Avery out to help Griffin on the subversive squad and that he had helped Griffin in his work as a detective. Both Griffin and the judge so testify. (See the record, pages 15 and 16 of Judge Zook's testimony.)

The reporter then said something to the effect that he would

have to inform his City Editor, whereupon Griffin told the judge that publicity would destroy Avery's value and to leave him in. Thereupon the Judge informed Griffin to see him in five days and he would let him know.

It is obvious there was no attempt at secrecy, and it is obvious the judge considered it a routine matter and not unusual, and it had been discussed freely with the reporter.

Thereafter on March 6, 1951, Griffin, joined later by his superior officer, Sgt. Carlton, appeared again before the Judge in chambers in the presence also of the Police Prosecutor who was there on other matters.

At that time there was further conversation about the release of Avery, part of which has been related. The Judge called Avery's counsel and asked him if it was all right to release Avery.

Thereupon the court called an employee in the Clerk's office and dictated the journal entry of release and instructed her to sign his name thereto which is as follows:—

**"The motion for a new trial and modification herein is heard, and said sentence is modified** and defendant is ordered to pay a fine of $150.00 and costs in the amount of $6.50 and serve five days in the Summit County Jail.

"It appearing that the defendant has now served said five days in the Summit County Jail, it is ordered that he be released from further custody upon payment of said fine and costs."

Thereafter Griffin secured said entry and he and his superior officer, Sgt. Carlton, went to the County Jail where Avery was released.

In other words, the court had by the record sustained Avery's counsel's motion for modification of sentence, and the defendant was released.

The court had had time during the interim of the first contact with Griffin to consider the matter. He had the opportunity to contact the police prosecutor, who was actually present on other matters when Griffin and Carlton were present in his office on said March 6, 1951, before the release of Avery.

It is complained that Griffin violated Rule 26—Section 22, on page 78 of the Police Rules in Evidence.

In the court's opinion this rule applies to an officer who is involved in the arrest of the accused and is instrumental in bringing him before the court. Attention is called to the words "for any criminal or person who has suffered by his act," which means the officer's act.

Attention is also called to the end of said rule, to-wit, **"any member** having knowledge concerning such compromise or ar-

rangement, and failing to inform his superior officer thereof, shall be subject to charges."

Sgt. Carlton knew what was going on and there is no claim he notified his superior officer and no charge was filed against him. This shows the court Sgt. Carlton did not consider that anything irregular was going on, and he was Griffin's superior officer, and an officer of excellent standing.

Many rules of a Police Department are ineffective on this subject. See **123 Oh St 456, State ex rel Christian v. Barry.**

The next rule claimed violated by Griffin is Police Rule 40, Section 43, page 120, as follows:

"Officers are forbidden to appeal to the court or its attaches for leniency in any case pending before the court, except by express permission of the prosecutor and then only in open court." (See City's Exhibit C.)

Technically, under this rule Griffin should probably have consulted the police prosecutor and asked his permission, but he went directly to the judge who had the motion for modification under advisement, and who had the full opportunity to consult the prosecutor if he deemed it necessary. In fact, as stated before, the police prosecutor was present while Griffin and Sgt. Carlton were in the court's chamber just before the release of Avery, but he was not consulted by the court.

**In good faith Griffin** went to the court in control of the matter. The court had full opportunity in the interim to check the matter with the police prosecutor and other authorities but chose otherwise, and in his best and sound judgment and discretion did what he did, and in this court's opinion his conduct was proper and legal.

He relied on Officer Griffin and what he and his superior officer, Sgt. Carlton, had told him, and followed the usual routine procedure in such matters.

It is interesting to note that Griffin offered to tell the Commission in private the reason he thought Avery could aid him in the work on the subversive squad, but the Commission chose not to hear it.

And then the Commission held in its finding that:—"Also no specific evidence was offered **in open hearing** to substantiate the belief that Mose Avery was in position to supply useful information with respect to subversive activity in the Wooster Avenue area."

The Commission's ruling in refusing to hear this evidence was probably due to the general belief at that time that on appeal to the Common Pleas Court the trial would proceed De Novo, that is, where all the evidence would again be presented anew together with any further evidence. But in the mean-

time the Supreme Court ruled that the appeal should be tried on the evidence below as is.

But having refused to hear the evidence offered by Griffin, the Commission was in error when it found toward the end of its decision as follows:—"These facts in our judgment strongly convince us that the officer's actions were impelled by certain urgent and compelling motives other than those related."

In **Hawkins v. Steubenville, 135 Oh St 468,** the court held that the Common Pleas Court on appeal from the Civil Service Commission's affirmance of the removal of the officer under §486-17a GC, is confined to the rendition of a judgment of affirmance or disaffirmance in toto, and the court is without authority to modify the same.

This case was followed by **Kearns v. Sherill, 137 Oh St 468,** which approved the latter case and held that the jurisdiction of the Common Pleas Court (and, of course, any higher court) **is limited to determining the sufficiency of the cause of removal.**

To the same effect see **159 Oh St 574,** which decided the method of procedure in the Common Pleas Court, as explained before herein, the doubt concerning which accounts for the delay on the hearing in this court.

Referring back to the case of **Hawkins v. Steubenville, 134 Oh St 468,** on **pages 472** and **473,** the Supreme Court definitely stated its interpretation of the law of such cases as the one at bar as follows:—

"The question now arising is whether the court was bound to affirm the decision of the civil service commission in view of the court's finding that appellee was proven guilty of the several charges preferred against him, namely, that he had been guilty of discourteous treatment of the public, neglect of duty and insubordination.

"Sec. 486-17a GC, provides that any officer, employee or subordinate in the classified civil service of the state, the counties, cities and school districts thereof, holding a position under the provisions of the civil service act 'may be removed for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office.'

"It will be noted that the statute employs the words 'may be removed.' Under this language, removal by the director of public safety, or by the civil service commission, of a police

officer upon a finding of guilty of the offenses listed in the statute, is not made mandatory. **By the same token, if the Court of Common Pleas finds that the officer was guilty of one or more of the statutory charges preferred against him, but is of the opinion that there is not sufficient cause for removal, it is not mandatory upon the court to affirm the commission.**

"That part of the journal entry which finds 'that there is not sufficient cause for the removal of William M. Hawkins from his position as patrolman in the police department of the city of Steubenville' falls within the scope and extent of the court's jurisdiction and states the judgment of the court, which is one of disaffirmance. However, that part of the journal entry in which the court finds that disciplinary punishment should be adjudged, and proceeds to impose the punishment of suspension, does not fall within the court's jurisdiction, is mere opinion, and is not controlling.

"We find no error in the rendition of the judgment." (Emphasis by the court.)

Attention is specifically called to the cross examination of Officer Griffin. It was highly inflammatory, full of innuendoes and argument and could have no other effect than to prejudice the Commission adversely.

The matter was blown up beyond all proportions to the evidence and the result was inevitable.

In the opinion of this court, the evidence wholly failed to substantiate the charges and there was not sufficient cause for the removal and Officer Griffin is entitled to be reinstated to his position as a police officer according to law, and it is so ordered.

An entry may be drawn accordingly with exceptions and full rights of appeal.