[Crim. No. 3877. First Dist., Div. Two. Aug. 16, 1961.]

THE PEOPLE, Respondent, v. WALTER CASTEDY, Appellant.

Melvin L. Hawley, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—By an information dated April 28, 1960, the defendant, Walter Castedy, was charged with two counts of the selling of heroin, in violation of section 11501 of the Health and Safety Code, and a prior conviction for the same offense in March 1957. Defendant admitted the prior conviction and entered pleas of not guilty to both counts. On this appeal from the judgment of conviction rendered on the jury verdict finding him guilty as charged,

and the order denying his motion for a new trial, he argues that the evidence is insufficient to sustain the judgment of conviction on each count, and that the delay in his arrest and the resulting unavailability of the informer participant as a witness denied him a fair trial.

The record reveals the following facts: About 6 p. m. December 3, 1959, Agents Charles Fahey, Alton B. Wong of the Federal Bureau of Narcotics, and Inspector Getchell of the Narcotics Detail of the San Francisco Police Department, picked up the informer, one Henry Yuen, near Broadway and Kearny Streets. The informer was searched by Fahey, equipped with the sender of a transmitting device, given instructions and $20 in marked government funds, and then driven to Broadway near Osgood Lane. When the informer left the vehicle, he walked down Broadway and crossed the street near Kearny. Wong and Fahey followed on foot and stationed themselves so that they could observe the informer, while Getchell remained in the unmarked police car and monitored the receiving apparatus of the transmitter. After a short while, about 6:30 p. m., the defendant approached the informer. They had a conversation and then the informer reached into his coat pocket and made a handing motion to the defendant. At this time, Agent Fahey crossed the street and walked up behind the defendant and the informer, and heard the defendant say: "I will make it as fast as I can." The defendant then turned and left. Inspector Getchell and Agent Wong followed the defendant in the car and watched him board a bus to Geary Street and then transfer to a bus going out on Geary. Wong and Getchell then returned to the Broadway Street area where the informer was still in the immediate presence and surveillance of Agent Fahey.

The defendant returned about 7:40 p. m. Officer Getchell, who at this time was in the police vehicle, heard the following conversation taking place on the receiving apparatus which the informer had on his person. The defendant said: "Hello, Henry"; the informer said, "Hi, Donkey," which was the defendant's nickname. Fahey watched as defendant then motioned the informer to walk up the sidewalk. They walked past the Beach Hotel. Defendant turned into the Beach Hotel and whistled or called to the informer and beckoned him to come in. The informer refused to enter. The defendant then entered the hotel while the informer remained on the sidewalk. The defendant then held the door open and beckoned to the informer and said: "Come on in." The informer said:

"no, I don't want to," and then finally went into the hotel. While he was in the hotel, the officer overheard the following portion of a conversation: one voice said: "Well, I only want a little bit," and the informant said: "Well, hurry it up. My man's waiting. I don't want to wait around. I want to get out of here." The officer also heard the voice of a third person.

In two or three minutes, the informer emerged from the hotel, walked up the street a little way and handed Agent Fahey a packet which was subsequently found to contain heroin.

Defendant first argues that there is a gap in the chain of evidence because the search of the informer was inadequate to discover the concealed narcotics. However, the officers testified that the search was "thorough" and described its extent. While the search was not a "strip search," that procedure is neither exclusive nor essential (*People* v. *Givens*, 191 Cal.App.2d 834 [13 Cal.Rptr. 157]).

Defendant next argues that the above evidence does not adequately negate the possibility that the informer obtained the narcotics from some other person and is, therefore, insufficient to sustain the conviction. Defendant cites *People* v. *Barnett*, 118 Cal.App.2d 336 [257 P.2d 1041]; *People* v. *Morgan*, 157 Cal.App.2d 756 [321 P.2d 873]; *People* v. *Richardson*, 152 Cal.App.2d 310 [313 P.2d 651]; and *People* v. *Lawrence*, 168 Cal.App.2d 510 [336 P.2d 189], in support of his argument. We do not think that those cases are applicable here as in each of them, the informer was not under the surveillance of the officers for a considerable period of time or there was evidence that the informer could have obtained the narcotics from some other person. The same is true of *People* v. *Morgan, supra*, and *People* v. *Robison* (1961), 193 Cal.App.2d 410 [14 Cal.Rptr. 181]. We think this case is governed by our decisions in *People* v. *Gonzales*, 186 Cal.App. 2d 79 [8 Cal.Rptr. 704]; *People* v. *Mateo*, 171 Cal.App.2d 850 [341 P.2d 768]; and *People* v. *Scott*, 170 Cal.App.2d 446 [339 P.2d 162], and, therefore, hold that the evidence is sufficient to sustain the judgment of conviction on count one of the information.

As to the second count, the record reveals the following similar facts: About 6:25 p. m. on January 18, 1960, Inspector Getchell, accompanied by Sergeant Brown of the San Francisco Police Department, again met with the informer Yuen. The informer was thoroughly searched, outfitted with a transmit-

ting device, given $35 and taken to Osgood and Pacific Streets. The informer left the vehicle, followed on foot by Sergeant Brown, while Inspector Getchell remained in the unmarked police vehicle with the receiving apparatus. When the informer met the defendant on Pacific between Kearny and Montgomery Streets, Inspector Getchell overheard the following conversation: The defendant said: "How much have you got?" and the informer replied: "$35." They then made arrangements to meet in 20 minutes on Broadway.

The defendant left and the informer then walked to the corner of Broadway and Kearny Streets. The defendant returned in a short while, walked up to the informant and said: "Yeah, here it is, three in one. It's brown, but it's good stuff." After handing the informer something, the defendant and the informer separated, each going his own way. The informer walked down Montgomery Street. When he was picked up by Inspector Getchell at the corner of Pacific and Montgomery Streets, he gave the inspector a packet of three separate bindles which were subsequently found to contain heroin. During the entire time that elapsed between the defendant's departure and his return, the informer was under the surveillance of the police officers. The informer said "Hello" to one or two other people but did not converse with any other person.

Defendant likewise argues that the search of the informer was inadequate. We have already discussed this matter in relation to count one above and need not embellish our discussion in relation to count two.

■ Defendant next argues that there is also a gap in the evidence as to count two, as the possibility that the informer obtained the narcotics from some other person has not been negated. This, however, is not the rule. Rather, we must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether such facts are sufficient to support the verdict (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]). Applying this rule to the above facts, there is no question that there is sufficient substantial evidence to support the verdict as to count two of the information.

■ The final argument on appeal is that the delay in the arrest of the defendant with the resulting absence of the informer Yuen as a witness at the trial deprived the defendant of due process. The record here reveals an extensive delay between the respective dates of the offenses [count one,

December 3, 1959; count two, January 18, 1960], the arrest of the defendant [some time in March 1960], and the filing of the information [April 28, 1960]. When asked the reason for the delay in the arrest of the defendant, Inspector Getchell replied that "they wanted to make more cases" with the informant Yuen.

Defendant, relying on *People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], here argues that the long delay which resulted in the unavailability of Yuen deprived him of an essential right at his trial. In the instant case, the informer was a participant; the defendant admitted his presence and participation in both transactions but stated he only lent the informer money on both occasions. There is no question that under these circumstances, the informer is a material witness (*People* v. *McShann,* 50 Cal.2d 802 [330 P.2d 33]; *People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19]; *People* v. *Melody,* 164 Cal.App.2d 728 [331 P.2d 72]). In *People* v. *Kiihoa, supra,* our Supreme Court indicated that the deliberate delay of an arrest after the informer had rendered himself immune from the process of the court to obtain his presence at the trial will manifest an intent to avoid the very purpose of the disclosure rule, and concluded that under the facts of the case, the police admission that the arrest was postponed for the express purpose of avoiding the adduction of the informant's testimony, the circumstances surrounding the prosecution affected and militated against the defendant's right to a fair and impartial trial. The court, however, specifically did not reach the question of whether the unavailability of a material witness would necessarily result in a denial of due process in every case.

Recently, in disposing of similar contentions, this court indicated that under the rule recognized in the *Kiihoa* case, *supra,* in the void of specific testimony as to any relation between the defendant's arrest and the informer's withdrawal from the state, the informer's departure was a "fortuitous incident" within the rule of *People* v. *Hammond,* 54 Cal.2d 846 [9 Cal.Rptr. 233, 357 P.2d 289] (*People* v. *McKoy,* 193 Cal.App.2d 104, 110 [13 Cal.Rptr. 809]; *People* v. *Givens* [Division One], 191 Cal.App.2d 834, 840 [13 Cal.Rptr. 157], petition for a hearing denied July 12, 1961). In both Givens and McKoy, the records revealed the fact of the delay between the offenses and arrests, but did not indicate any reason therefor.

The question posed by the instant case is whether the testi-

mony of Inspector Getchell that the arrest of the defendant was delayed for several months because "we wanted to make more cases with the informant" indicates that "the prosecution was allowed to control the course of proceedings in a manner which would prevent the accused from presenting material evidence." (*People* v. *Kiihoa, supra,* p. 752.)

The question is one of balancing the public interest and individual rights. The many cases decided in this state alone in the few short years since the adoption of the rule requiring the disclosure of the identity of the informer attest to the complexity of the issues thus presented (see cases collected in 76 A.L.R.2d 262). Ordinarily, a police officer is under a duty to protect the public and arrest anyone committing a felony in his presence (Pen. Code, § 836). However, the courts have sanctioned a delay in an arrest in order to avoid alerting other potential offenders (*People* v. *Bradford,* 130 Cal.App.2d 606, 608 [279 P.2d 561]) as long as the delay is not the result of an unlawful purpose and does not result in a deprivation of due process (*People* v. *Kiihoa, supra*), as well as the use of informers (*Taylor* v. *United States* (9 Cir. 1956), 238 F.2d 409), the preservation of the anonymity of the informer (*People* v. *McMurray,* 171 Cal.App.2d 178 [340 P.2d 335]), and the trading of enforcement for information (*Griffin* v. *Renkert* (Ohio, 1954), 121 N.E.2d 171) ; (for an excellent discussion of related problems, see Goldstein, *Police Discretion not to Invoke the Criminal Process,* 69 Yale L.J. 543-594).

Although duly watchful and protective of the rights of individual defendants, the courts of this state are also mindful of the ever increasing burden on law enforcement agencies in their continuing endeavor to stamp out the illicit and vicious narcotic traffic. Thus, it has been repeatedly held that as neither side is required to produce all the witnesses who may have some knowledge of the facts, the prosecution is not required to call an informer as part of its case (*People* v. *Taylor,* 159 Cal.App.2d 752 [324 P.2d 715]) or to produce the informer as a witness (*People* v. *McShann,* 177 Cal.App.2d 195 [2 Cal.Rptr. 71]). Under the same reasoning, it has been held that the absence of the informer-participant as a witness does not violate the accused's right to confrontation (*Dear Check Quong* v. *United States,* 160 F.2d 251).

Of course, here the question is not one of confrontation, but whether the unavailability of the only witness who could contradict or amplify the testimony of the prosecution witnesses resulted in denying the defendant the ability to rebut

a material element of the prosecution's case and thereby prove his innocence. Under facts similar to those here presented, it has been held that the absence of the informer-participant at the trial is not a denial of due process where there is evidence that the prosecution had made reasonable efforts to locate the absent witness and the jury has been instructed that unless the absence of the witness was sufficiently explained [by the testimony of the prosecution witnesses as to the reasons therefor], they could draw the inference that the testimony of the absent witness would be unfavorable to the prosecution (*Washington* v. *United States* (1958, C.C.A., Wash., D.C. Circuit), 258 F.2d 696).

The facts of this case do not indicate that the prosecution had any intent to cause the absence of the informer but that the delay was for the mere purpose of more efficient law enforcement.

Finally the record discloses that the defendant made no effort to call the informer as a witness nor did he ask for a continuance to locate the informer. Furthermore, the defendant made no objection in the trial court on the basis of the unavailability of the informer. On appeal, he cannot now complain.

Judgment and order affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied September 15, 1961, and appellant's petition for a hearing by the Supreme Court was denied October 11, 1961.