[Crim. No. 4200.   First Dist., Div. One.   June 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. GERALD BASLER, Defendant and Appellant.

Lloyd Levitin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny, Keith E. Pugh, Jr., Albert W. Harris, Jr., and Michael R. Marron, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant was charged in an information with, and after a trial by jury convicted of, the sale of marijuana in violation of section 11531 of the Health and Safety Code. He appeals from the judgment.

On the morning of February 9, 1962, Inspectors Martin and Lawler of the narcotics detail of the San Francisco Police Department met by prearrangement one John Gonzales, an informant, at the corner of 25th and Fair Oaks Streets in San Francisco. Gonzales, who was employed as a salesman by the Colonial Bakeries, drove there in his bakery truck. He had already arranged to buy marijuana from the defendant, alerted the police and agreed to cooperate with them.

Inspector Lawler made a thorough search of the informant's person and clothing to determine whether he had any contraband on him. This was done on the street in the presence of Martin. Gonzales was not disrobed but, as Lawler testified, "[h]is clothing was loosened and thoroughly searched. His stockings were searched, the waistband was searched, and his pockets, and anything that could conceal anything was searched." Both inspectors then searched the driver's compartment of the truck and the adjoining area of the body of the truck which could be reached from the driver's compartment. However, beyond this, large fitted cases for bakery goods extended across the truck from one side to the other and blocked passage to the rear. Thus the only way for one to enter the rear of the truck was by the rear door. As a result of the above search procedures, the inspectors satisfied themselves that Gonzales had no narcotics on his person, in the driver's compartment of the truck, or in that part of the truck adjacent thereto.

Martin and Lawler then gave Gonzales a five dollar bill with

which to buy the narcotics from the defendant. They made a record of its serial number.

Inspector Lawler thereupon left and walked to 24th and Dolores Streets where Gonzales planned to meet the defendant. He took his position inside a doctor's office on the northwest corner of the intersection. From the window, he saw the defendant standing on the northeast corner. Martin and Gonzales remained at the first location long enough for Lawler to do this. Gonzales then reentered his truck and drove to the agreed meeting place, followed by Martin in his own car.

Gonzales parked the truck in a bus stop at the northwest corner of the intersection and directly in front of the medical office where Lawler had assumed his observation post. Martin parked his car at the southeast corner, where he had a full view of the entire intersection and of the bakery truck. Martin testified that from the time Gonzales left 25th and Fair Oaks until he arrived at 24th and Dolores (actually a distance of two blocks) Gonzales was constantly in sight and had no contact with any person. He then saw the defendant walk across 24th Street to the informant's truck. Gonzales, however, alighted from the truck on the curb side and as a result the truck blocked Martin's view of the meeting between the two men.

However they remained in Lawler's view and in fact were only about 15 feet away from him. Lawler saw the defendant come up to the truck just as Gonzales was opening the door. Both men stood near or on the curb. Gonzales reached into his pocket for his wallet and took some currency in his hand. He handed this to defendant. The defendant took the money and in turn handed Gonzales what appeared to be a wax paper package. The two men talked briefly and then Gonzales reentered his truck and drove away. He drove back to 25th and Fair Oaks Streets, again followed all the way by Inspector Martin. During the return trip, Gonzales had no contact with any person. Lawler continued to watch the defendant who waited for and finally boarded a westbound bus.

When they returned to 25th and Fair Oaks Streets, Gonzales turned over to Inspector Martin the wax paper bag containing five marijuana cigarettes. Martin searched Gonzales. The latter no longer had the five dollar bill which the inspectors had given him.

The defendant, upon taking the stand in his own defense,

testified that he had agreed to and did meet Gonzales as witnessed by the inspectors and that Gonzales had paid him $5.00. However the defendant testified that this meeting had been arranged so that Gonzales could pay off a gambling debt incurred during the course of a domino game played during the previous afternoon and evening. According to the defendant, the game was played by four persons, including the defendant and Gonzales, at a restaurant, starting at about 4 p.m. and concluding at about 9 or 10 p.m. The defendant stated that he had known Gonzales for about four years and that the latter occasionally stopped at the restaurant while on his bakery route. On the occasion in question, Gonzales had given the defendant an I.O.U. for the $5.00. It was this paper, according to the defendant, which he handed to Gonzales in exchange for the five dollar bill.

The sales manager of the Colonial Bakeries, Gonzales' employer, called in rebuttal by the prosecution, testified that the normal working hours of Gonzales were from 7:30 or 8 a.m. until 5:30 or 6 p.m., that Gonzales had been paid for the full working day of February 8, 1962, the day of the alleged domino game, and that the company would know if a truck had been kept out as late as 10 p.m.

Defendant contends here (1) that the evidence is insufficient to sustain his conviction; and (2) the prosecutor committed prejudicial misconduct. The claim of insufficiency of evidence rests on the assertion of ''a fatal gap in the chain of proof'' alleged to result from (a) the inadequacy of the presale search of the informant Gonzales; and (b) the fact that such informant was not under constant visual surveillance.

As the court pointed out in *People* v. *Wilkins* (1960) 178 Cal.App.2d 242, 245 [2 Cal.Rptr. 908], the reason for a presale search ''is to prevent an informant from hiding on his person narcotics which he may later claim were obtained from another person.'' The instant record shows that the inspectors described the search which they made, testified that it was thorough (cf. *People* v. *Castedy* (1961) 194 Cal.App.2d 763, 766 [15 Cal.Rptr. 413], cert. denied, 369 U.S. 825 [82 S.Ct. 841, 7 L.Ed.2d 790]) and further stated that upon its conclusion they were satisfied that there were no narcotics on the informant or in or near the driver's compartment of his truck. The record thus supports the implied finding of the jury that the purpose of the search was accomplished. We cannot say that as a matter of law it was inadequate. We are not impelled to such a conclusion by the fact that it was not

a strip search since "that procedure is neither exclusive nor essential." (*People* v. *Givens* (1961) 191 Cal.App.2d 834, 838 [13 Cal.Rptr. 157], cert. denied 368 U.S. 970 [82 S.Ct. 444, 7 L.Ed.2d. 398] ; *People* v. *Wilkins, supra*; *People* v. *Castedy, supra*; *People* v. *Sauceda* (1962) 199 Cal.App.2d 47, 53 [18 Cal.Rptr. 452].) Nor, contrary to defendant's claim, do the foregoing or any other California cases hold that a strip search becomes essential as a matter of law where the informant has a compelling motive to conceal, or is a bad character, or has the opportunity to plant evidence. These are hazards frequently found in the use of informants. The important determination to be made in each case is that the particular search has accomplished its purpose and prevented the informant from concealing the narcotics and later claiming they were received by him from another. In the instant case, the jury so determined.

We are presented with the additional argument, in some respects merged with the preceding one, that there was a gap in the visual observation of the informant. This claim is without any support in the record. The uncontradicted evidence is that Martin followed the informant to and from the scene of the sale. It is true that during the course of both trips Martin, who was following the truck, could not see the informant himself in the cab of the truck. This is not a fatal flaw in the evidence because the significant feature of Martin's testimony is that during the trips no other person contacted the informant. While the sale itself was blocked from Martin's view, it was within the full and clear view of Inspector Lawler. Thus at all times the informant was under the surveillance of one or the other of the two inspectors. The effect of this evidence is that throughout the entire period of time no person contacted the informant but the defendant.

Thus the instant case satisfies the rule announced in *People* v. *Barnett* (1953) 118 Cal.App.2d 336 [257 P.2d 1041] ; *People* v. *Richardson* (1957) 152 Cal.App.2d 310 [313 P.2d 651] ; and *People* v. *Morgan* (1958) 157 Cal.App.2d 756 [321 P.2d 873], all of which are cited by defendant, and in *People* v. *Robison* (1961) 193 Cal.App.2d 410 [14 Cal.Rptr. 181]. The essence of this rule is that the evidence must show that the informant had no opportunity to contact anyone else at the time of the sale of the narcotics. In the above cases, a "gap in observation" of the informant required a reversal of the conviction because it appeared that the informant, when he was out of sight of the police, could have obtained the nar-

cotics from another source. Such a possibility is precluded here. Defendant cannot point to a gap in observation falling within the above rule.

■ Defendant argues that since, on the trips to and from the scene of the alleged sale, the informant was out of the visual observation of the inspector although his truck was not, a fatal gap in observation actually existed because of the manner of the preliminary search. The argument runs as follows: In both the *Wilkins* case and the *Givens* case, the informant was under the constant visual observation of the officers who did not see the informant make any motions towards his or her body.[1] Thus, as held in those cases, a strip search was not essential since the informant could not have removed the narcotics without being seen and the narcotics later turned over to the officers could have only come from the defendant. Therefore, it is argued, the rule as to the non-essentiality of a strip search must be confined to those cases where the informant is continuously observed *and* is not observed to have made any motions towards his body.

We find no merit in this contention. In *Wilkins* the presale search of the female informant wearing a tight fitting knit dress conducted by feeling along the outside of the dress was held adequate under all of the circumstances of the case including that pointed out above (see fn. 1, *ante*). *Wilkins* in fact formulates no rule about a "strip search" and does not even mention that expression. In *Givens* the presale search, the extent of which is not disclosed by the opinion, was also held to be sufficient under all of the circumstances of that case. The court said: "While it is true that such inspection did not attain the thoroughness of the frequently used 'strip search' [citations], that procedure is neither exclusive nor essential" thereafter referring to *Wilkins* and the search therein involved. In formulating the above rule on a strip search, *Givens* does not state that it is applicable only where the informant makes no motion towards his body. Neither case declares the narrow rule urged by defendant. We think that the rationale of both of them is that the adequacy of the presale search depends on the circumstances of each case,

---

[1] In *People* v. *Wilkins, supra,* 178 Cal.App.2d 242, 245, the court said: "There is nothing in the record to indicate that the informant made any motions toward her body during the period of her surveillance." In *People* v. *Givens, supra,* 191 Cal.App.2d 834, 838, the court said: "[N]othing in the record indicates that the officers saw him make any motions toward his body or otherwise, except to remove his hand from his pocket."

that a strip search is not a *sine qua non* of adequacy, and that both searches under the evidence were adequate. This is borne out by the fact that the rule is reiterated in both *People* v. *Castedy, supra,* 194 Cal.App.2d 763, cert. denied, 369 U.S. 825, and *People* v. *Sauceda, supra,* 199 Cal.App.2d 47, without the restriction contended for by this defendant.

Defendant also argues that there is no testimony that the wax paper package which Gonzales turned over to the inspectors was the identical package which he received from the defendant. However, as the court stated in *People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778], quoting from *People* v. *Tom Woo* (1919) 181 Cal. 315 [184 P. 389] at p. 327: ''We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence. . . .'' Gonzales had no wax paper package on his person or in the driver's compartment of his truck before he met the defendant. Inspector Lawler saw the defendant hand him a wax paper package. After Gonzales returned from his meeting with the defendant, he turned over a wax paper package to Inspector Martin. Later Inspector Lawler delivered the package and its contents to the police criminologist. We think that the jury could have reasonably concluded that this was the same package handed to Gonzales by the defendant. *Panci* v. *United States* (5th Cir. 1958) 256 F.2d 308, cited by defendant, is distinguishable from the instant case, since in that case a gap in the proof failed to negate the possibility that the person to whom the defendant handed a paper bag, obtained the narcotics from another source.

We turn to defendant's second main contention on appeal. Under this, defendant specifies two separate instances of prejudicial misconduct on the part of the prosecutor.

On the cross-examination of the defendant, the following occurred: ''Q. You know what marijuana is, don't you? A. Yes, I do. Q. You use it, don't you? A. I have used it. Q. When was the last time you used it? You use it frequently? A. I have used it since 1957. Q. And you know what the phrase 'blast weed' means, don't you? It means to smoke marijuana? A. Yes. Q. At the time that you were arrested you told the officers who arrested you that you 'blasted weed' all the time, didn't you tell them that? A. No, I don't believe I did. Q. And where were you arrested, by the way? A. At the Nalline Clinic.''

Defendant contends that by the above cross-examination, the prosecution introduced evidence of a collateral crime, namely of the defendant's *use* of narcotics in violation of section 11721 of the Health and Safety Code with the intention of degrading defendant in the eyes of the jury and showing an inclination on his part to commit the crime charged. It is conceded by the defendant that he made no objection to such prejudicial matter, did not assign the asking of any of the questions as misconduct or request the court to instruct the jury to disregard them, and did not make any motion to strike the testimony.

Respondent on the other hand contends that the prosecutor was guilty of no impropriety since it was incumbent upon the People to prove that the defendant had knowledge of the narcotic character of the substance which was sold. As evidence of the prosecutor's good faith in this respect, we are referred by the respondent to that portion of the prosecutor's opening argument to the jury in which the relevance of the testimony here objected to is made clear.[2]

Knowledge by the defendant of the narcotic nature of the substance sold by him is an essential element of the crime of selling narcotics and the prosecution must establish such knowledge. (*People* v. *Ballard* (1956) 145 Cal.App.2d 94, 99 [302 P.2d 89]. Cf. *People* v. *Winston* (1956) 46 Cal. 2d 151, 161 [293 P.2d 40]; *People* v. *Horn* (1960) 187 Cal. App.2d 68, 74 [9 Cal.Rptr. 578], cert. denied, 368 U.S. 846 [82 S.Ct. 76, 7 L.Ed.2d 44].) Even if the defendant has not denied such knowledge, the prosecution must still carry the burden on such issue. (*People* v. *Horn, supra,* at p. 75.)

In the instant case, the defendant in answer to the first question set forth above admitted that he knew what marijuana was. We have some doubt whether this meant that he knew what the *narcotic character* of marijuana was and that the answer thus effectively removed knowledge as a real issue in the case. We are more inclined to believe that the first *two* questions and answers did have this result. In other words, we think that if the defendant knew what mari-

---

[2]Part of the prosecutor's remarks is as follows: ''[W]e do not feel that there is any dispute that this defendant knows and has known for some long period of time what marijuana is and is capable of recognizing and identifying marijuana. He testified from the stand that he had used it. He testified from the stand that he was familiar with the slang expression of 'blasting weed' which means smoking it.

''He testified from the stand he does not recall whether he told the arresting officers at the time they did arrest him at the Nalline Clinic that he did 'blast weed' all of the time, that he used it quite frequently.''

juana *was* and *used* marijuana it could certainly be concluded that he knew its narcotic character. It is at least arguable therefore that the next four questions were unnecessary and objectionable.

Assuming *arguendo* that the asking of these questions by the prosecutor constituted misconduct, can the defendant now complain of such misconduct on this appeal having failed to properly raise this issue in the trial court? ▉ The principles determining our answer are set forth in *People* v. *Berryman* (1936) 6 Cal.2d 331, 337 [57 P.2d 136]: "The general rule regarding misconduct of the district attorney which tends to and is likely to result in prejudice to the defendant is that where no objection is made to such misconduct by the defendant, or where objection is made and the court sustains the objection and properly admonishes the jury, the misconduct claimed to be prejudicial to defendant's rights will not furnish grounds sufficient to justify the granting of a new trial or the reversal of the judgment. [Citation.] ▉ There are two exceptions to this general rule. One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. [Citation.] The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court. [Citations.]" (See also: *People* v. *Perez* (1962) 58 Cal.2d 229, 247 [23 Cal.Rptr. 569, 373 P.2d 617]; *People* v. *Lyons* (1958) 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Kirkes* (1952) 39 Cal.2d 719, 726-727 [249 P.2d 1]; *People* v. *West* (1932) 215 Cal. 87, 96 [8 P.2d 463]; *People* v. *Sieber* (1927) 201 Cal. 354, 356 [257 P. 64].) ▉ "Whether a prosecutor has been guilty of prejudicial misconduct must be determined in the light of the particular factual situation involved." (*People* v. *Lyons, supra,* 50 Cal.2d at p. 262.)

▉ It is clear to us that the instant case does not fall within the first exception. This is not a close case where there is grave doubt of the defendant's guilt. The evidence clearly establishes that the defendant sold the informant the marijuana for $5.00. The transaction was observed by Inspector Lawler. Defendant's explanation of his meeting with the informant as the occasion for the repayment of a

$5.00 gambling debt was in no way corroborated. Defendant produced neither of the other participants in the game; nor did he call any person attached to the restaurant where it was held. His testimony as to the length of the game was impeached by the informant's employer. The instant case is therefore distinguishable from *People* v. *Spencer* (1956) 140 Cal.App.2d 97 [294 P.2d 997], relied on by defendant. In *Spencer*, despite the fact that the defendant admitted that he knew the nature of heroin and in fact identified a bindle of heroin at the trial, the prosecution sought to introduce evidence of a previous conviction of a misdemeanor. Defendant there objected to the question and such objection was sustained. He also made a motion for a mistrial which was denied. The conviction was reversed because defendant's knowledge of the narcotic was not a real issue when the objectionable question was asked and since the case was a close case it was concluded that errors in question "may well have swung the balance. . . ." (P. 105.)

Nor does this case fall within the second exception since a prompt objection to the questions would doubtless have cut off any unnecessary questions bearing on the issue of knowledge and have brought a resolution of the question as to whether it continued to be a real issue in the case.

The defendant also claims that the prosecutor committed prejudicial misconduct in the course of his opening argument to the jury while commenting on the defendant's failure to call as witnesses the other participants in the alleged gambling incident. The prosecutor then contrasted the absence of such witnesses with the absence of the informant Gonzales in the following language of which defendant now complains: "You can certainly account for the absence of somebody like Gonzales who is an informant, a special employee. You might infer from the conduct of the police officers in this case in following it so closely, in following Gonzales so closely, they never intended to call him. Why? Because it is a policy not to call informants or special employees for several reasons. No. 1, it is very dangerous to their health and safety to require them to testify.

"No. 2, it is rather embarrassing to have them face somebody whom they have known and whom they were at one time friends with and have them testify. . . ."

This was repeated in part in the closing argument to the jury: "If they [i.e., informants] are going to be damaged physically or put in jeopardy or difficulty, or going to be told

they have to appear in court, that might well preclude the co-operation which is essential in the future.''

Defendant contends without citation of any authority that the above remarks were calculated to inflame the jury by leading them to infer that the defendant was a man capable of murder or mayhem. In this instance also, the defendant failed to make any objection or assignment of misconduct.

■ We find no impropriety in the prosecutor's comment upon the defendant's failure to produce as witnesses in his behalf the other two players in the domino game at which the defendant claimed the informant Gonzales lost $5.00 to him, or for that matter any other persons in the restaurant who might have seen defendant playing such game. Such witnesses would have been material since they would have substantiated the defendant's explanation of his receipt of the $5.00. It is the rule that the prosecutor may comment upon the failure of the defendant to produce material witnesses who would substantiate his story. (*People* v. *Carter* (1953) 116 Cal.App.2d 533, 539 [253 P.2d 1016]; *People* v. *Fitzgerald* (1936) 14 Cal.App.2d 180, 205 [58 P.2d 718].[3]) Such rule derives from the well recognized principle that the non-production of evidence may give rise to the inference that it would have been adverse to the party who could have produced it. (2 Wigmore, Evidence (3d ed.) § 285, p. 162; cf. Code Civ. Proc., § 1963, subd. 5.)

■ However, the prosecutor's conjoined remarks explaining why the *prosecution* had not produced the *informant* were of a different nature. In this phase of the argument he was not commenting on the *opposite* party's failure to produce witnesses but on his own. Nor did any previous remarks by the defendant on the prosecution's failure to produce the informant call for any explanations in reply by the district attorney.

■ As stated in *People* v. *Love* (1961) 56 Cal.2d 720, 730 [16 Cal.Rptr. 777, 17 Cal.Rptr. 481, 366 P.2d 33, 809]: ''Counsel's summation to the jury 'must be based solely upon those matters of fact of which evidence has already been introduced or of which no evidence need ever be introduced because of their notoriety as judicially noticed facts.' (6 Wigmore, Evidence (3d ed. 1940) § 1806, p. 269; accord *People* v. *Evans,* 39 Cal.2d 242, 251 [246 P.2d 636].) ■ He may

---

[3]Overruled on other grounds in *People* v. *Weiss* (1958) 50 Cal.2d 535, 566 [327 P.2d 527].

state matters not in evidence that are common knowledge, or are illustrations drawn from common experience, history, or literature. [Citations.] ■■■ He may not, however, under the guise of argument, assert as facts matters not in evidence or excluded because inadmissible. [Citations.]'''

■■■ The prosecutor's comments purporting to account for the absence of the informant were improper. The so-called policy reasons for not calling Gonzales were not based on any evidence in the record or any matters properly the subject of judicial notice. Nor did the comments relate to matters which, while not in evidence or subject to judicial notice, were of common knowledge or experience. They therefore offended against the rule that the argument of counsel "must not be an assertion made upon his own credit." (6 Wigmore, Evidence (3d ed.) § 1806, p. 259.)

Although improper, we do not find the argument to have the inflammatory character claimed by the defendant. We think that the prosecutor referred to an overall prosecutive policy. He did not state that Gonzales was not produced because of possible retaliation by the defendant. The tenor of this portion of the argument seems purposely generalized and without any reference to the defendant. We do not condone this type of comment because despite its generality there remains the hazard of the jury associating the defendant with the matters mentioned by the prosecutor. However, there was no objection to these comments. Since they were objectionable principally because they constituted a comment on matters not in evidence, we think that they could have been blocked at their very beginning by prompt objection and that any harmful results could have been cured by instruction of the court.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied June 28, 1963, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1963.