FRIEDMAN, J.
 

 Defendant Gibbs appeals after a jury found him guilty of selling marijuana. He charges-' that prejudicial error occurred when the prosecution was permitted to place in evidence the transcribed testimony of a witness named Smith, who had testified at defendant’s preliminary examination.
 

 Smith was acting as a police informer. A state narcotics agent had driven him to the residences of two suspected marijuana dealers to make “buys.”' Smith entered the home of one Cole, who gave him a marijuana, cigarette. Later' he was let off near, the residence of defendant Gibbs'. .'Smith entered, then returned with á “lid” (slightly over an ounce)
 
 *737
 
 of marijuana. Before each visit the agent searched Smith to assure himself that Smith had no marijuana on Ms person. Both Cole and Gibbs were arrested. Their preliminary-examinations took place on the same day.
 

 The informer testified at both preliminary examinations. Hé was not produced as a witness at defendant’s trial. At the trial the prosecution sought leave to read his testimony into evidence under Penal Code section 686, upon a showing that he could not “with due diligence” be found within the state.
 
 [1]
 
 Outside the jury’s presence a police officer testified to the details of a search for Smith during the two weeks preceding the trial. Smith’s brother testified to a long distance telephone conversation with Smith in which the latter had expressed an intent to go to South America. Over a defense objection the trial court ruled that the prosecution had shown adequate diligence and permitted the absent witness’s testimony in defendant’s preliminary examination to be read to the jury. Later, as part of the defense, defendant’s trial counsel adduced evidence of a portion of Smith’s testimony at Cole’s preliminary examination when, under cross-examination by Cole’s attorney, Smith admitted use of marijuana.
 

 Adequacy of the prosecution’s showing of due diligence to locate the missing witness was addressed to the sound discretion of the trial judge.
 
 (People
 
 v.
 
 Dunn,
 
 29 Cal.2d 654, 660-661 [177 P.2d 553].) We have examined the testimony aimed at fulfillment of the due diligence requirement and are satisfied that no abuse of discretion occurred.
 

 Defendant’s principal claim is invasion of his constitutional right to confront the witness. The Sixth-Amendment’s guarantee of the right of confrontation is
 
 *738
 
 imported into state prosecutions by the due process clause of the Fourteenth Amendment; the major reason underlying the right of confrontation is to give the accused an opportunity to cross-examine prosecution witnesses; the right, however, does not preclude evidentiary use of the testimony of an absent witness, provided that the defendant’s attorney had an adequate opportunity to examine the witness.
 
 (Pointer
 
 v.
 
 Texas,
 
 380 U.S. 400, 403-404, 407 [13 L.Ed.2d 923, 926-927, 928, 85 S.Ct. 1065];
 
 Douglas
 
 v.
 
 Alabama,
 
 380 U.S. 415, 418 [13 L.Ed.2d 934, 937, 85 S.Ct. 1074].) A dictum in the
 
 Pointer
 
 ease declares that the opportunity for cross-examination should be “complete and adequate.” (380 U.S. at p. 407 [13 L.Ed.2d at p. 928].) Allegiance to the confrontation guarantee requires California courts to inquire into the circumstances of each ease and to determine whether the proffered testimony was given under circumstances which permitted adequate cross-examination.
 
 (People
 
 v.
 
 Banks,
 
 242 Cal.App.2d 373, 378-379 [51 Cal.Rptr. 398]; see also
 
 People
 
 v.
 
 Haney,
 
 249 Cal.App.2d 810, 816 [58 Cal.Rptr. 36];
 
 People
 
 v.
 
 Washington,
 
 248 Cal.App.2d 470, 473 [57 Cal.Rptr. 487].)
 

 Defendant asserts that the attorney who represented him at his preliminary examination, Mr. Ward, did not have adequate opportunity to cross-examine Smith, for the attorney had been appointed only five minutes before the hearing started. He argues that the attorney might have been adequately prepared to cross-examine Smith for the purpose of the magistrate’s hearing, but did not have the kind of opportunity needed for investigation and preparation of cross-examination of a witness whose testimony was ultimately to be used at the trial itself.
 

 At the inception of Cole’s preliminary examination, the magistrate was under the impression that Cole and Gibbs were being jointly prosecuted, for he called both cases together. He observed that Attorney Ward had been appointed by the court to represent Cole; that Gibbs, on the other hand, had evinced financial ability to employ his own attorney but had failed to do so. The magistrate then requested Mr. Ward, the court-appointed attorney for Cole, to see that Gibbs’ rights were “protected.” At the request of both sides the magistrate then conducted Cole’s hearing as a separate matter. When Gibbs’ ease was called, Mr. Ward inquired whether the court was appointing him to represent Gibbs, declaring that he could represent the ac
 
 *739
 
 cused completely only if he had the right to cross-examine witnesses. The court then appointed Mr. Ward as defendant’s attorney and, at the attorney’s request, declared a five-minute recess, presumably to permit the attorney to confer with Gibbs.
 

 After the hearing opened, Mr. Ward cross-examined each of the three prosecution witnesses (a state chemist who identified the purchased substance as marijuana, the state narcotics agent and Smith, the informer). On direct examination Smith described his visit to the defendant, stating that on the day in question he had entered defendant’s home, talked for 15 minutes and bought a packet of marijuana from him for $10. On cross-examination, Mr. Ward elicited testimony that Smith had visited Cole’s house first, then defendant’s; that he had been in defendant’s house about 15 minutes, during which he and defendant had gossiped; that after he had bought the marijuana he left; that the term “lid” referred to a quantity of marijuana. The prosecution’s examination of Smith occupies slightly over two transcript pages, his cross-examination one page. Upon completing his cross-examination, Mr. Ward declared that he desired to call no witnesses. He moved to dismiss the complaint on the ground that the evidence failed to show Gibbs’ knowledge of the substance ’s character. The motion was denied and Gibbs was held for trial.
 

 Bare existence of an opportunity for cross-examination in a prior proceeding supplies only a limited indicator of the opportunity’s adequacy.
 
 Pointer
 
 v.
 
 Texas
 
 holds the opportunity inadequate when the accused has no lawyer. The presence and participation of counsel, however, do not necessarily ensure the opportunity’s adequacy. Qualitative factors play a role. The nature of the proceeding
 
 •
 
 the character of the witness and his connection with the events; the extent and subject of his direct testimony; the time and preparatory opportunities available to the accused and his attorney—these are some of the influential factors.
 

 In most California criminal prosecutions the preliminary examination is conducted as a rather perfunctory uncontested proceeding with only one likely denouement — an order holding the defendant for trial.
 
 [2]
 
 Only television
 
 *740
 
 lawyers customarily demolish the prosecution in the magistrate’s court The prosecution need show only “probable cause,” a burden vastly lighter than proof beyond a reasonable doubt. (See
 
 Rideout
 
 v.
 
 Superior Court,
 
 67 Cal.2d 471 [62 Cal.Rptr. 581, 432 P.2d 197].) Committing magistrates usually accept the prosecution evidence at face value, leaving credibility judgments for the trial of guilt. The tactical influences pervading the process tend to induce shallow cross-examination. Limited cross-examination at the preliminary hearing is a frequent tactic of adept and skilled defense lawyers. Cross-examination may lack width and depth, not because counsel lacks opportunity, but because he chooses to defer his real effort until the trial itself. (See Cal. Criminal Law Practice (Cont.Ed.Bar, 1964) pp. 240-242.) The choice creates no defense disadvantage if the prosecution witness testifies at the trial. He is then available for painstaking and incisive cross-examination. If the witness disappears and his transcribed testimony is read to the jury, the opportunity for cross-examination disappears with him. In that situation waived or curtailed cross-examination exposes the defense to grave tactical damage.
 

 The use of informers in narcotics enforcement is recognized and accepted. (See
 
 Powell
 
 v.
 
 United States,
 
 352 F.2d 705, 708;
 
 People
 
 v.
 
 McShann,
 
 50 Cal.2d 802, 806 [330 P.2d 33] ;
 
 People
 
 v.
 
 Gilmore,
 
 239 Cal.App.2d 125, 129-130 [48 Cal.Rptr. 449].) Informers are prone to disappearance. Frequently they cannot be kept “on ice” until trial. Defense-induced departure is a possibility. (See
 
 People
 
 v.
 
 Gilmore, supra,
 
 239 Cal.App.2d at p. 129;
 
 People
 
 v.
 
 Dozier,
 
 236 Cal.App.2d 94, 102 [45 Cal.Rptr. 770].) If the informer is not a key witness, the prosecution may either dispense with his testimony or utilize him as a grand jury witness. If his testimony is important or essential, the prosecution may file a complaint, call the informer as a witness at the
 
 *741
 
 preliminary examination, expose Mm to cross-examination and perpetuate his testimony as insurance against his possible disappearance. TMs prosecution techmque would be thwarted if the defense were permitted to manufacture a confrontation objection for trial use by deliberately waiving or curtailing cross-examination at the preliminary hearing.
 

 Particularly when the witness is a police informer, his cross-examination may be vital to the defense. He and the accused may be the only participants in the transaction, the remainder of the prosecution’s evidence consisting only of circumstantial support for the informer’s testimony. (See
 
 People
 
 v.
 
 Basler,
 
 217 Cal.App.2d 389, 394-397 [31 Cal.Rptr. 884];
 
 People
 
 v.
 
 Wilkins,
 
 178 Cal.App.2d 242, 245 [2 Cal.Rptr. 908].) The informer is frequently eligible for prosecution as a drug user or possessor. A hope of leniency on the part of a prosecution witness who himself faces prosecution is an appropriate subject for cross-examination.
 
 (People
 
 v.
 
 Pantages,
 
 212 Cal. 237, 253 [297 P. 890]; Witkin, Cal. Evidence (2d ed. 1966) § 1231.) The informer’s veracity may be the only chink in the prosecution armor, attack on his credibility the only method of piercing it. A defense lawyer who elects not to impeach the witness at the preliminary examination may find himself without another opportunity if the witness fails to appear at the trial.
 

 In this ease the defense had a bare opportumty to cross-examine the witness, but the opportunity was far from "complete and adequate.”
 
 (Pointer
 
 v.
 
 Texas, supra,
 
 380 U.S. at p. 407 [13 L.Ed.2d at p. 928].) Defense counsel entered the case only five minutes before the hearmg. He had partial knowledge of the facts through his representation of Cole in the latter's prosecution. In that role he would have considered Smith’s character as an informer, Smith’s own probable use of contraband, the arranged "buying” expedition and the transaction between the informer and Cole. He would not have prepared himself for courtroom inqMry into the activities of the officer and the informer relative to Gibbs. The sale by Gibbs and the seller’s knowledge of the narcotics character of the substance were basic elements in the prosecution proof. (See
 
 Rideout
 
 v.
 
 Superior Court, supra,
 
 67 Cal.2d at p. 474;
 
 People
 
 v.
 
 Williams,
 
 202 Cal.App.2d 387, 391 [20 Cal.Rptr. 740].) Smith, the informer, was the only prosecution witness who could establish these facts by observation. Although the informer
 
 *742
 
 had been searched by the narcotics agent before he entered the suspect’s house, the agent’s own observations were, at best, highly circumstantial. (See
 
 People
 
 v.
 
 Basler,
 
 217 Cal.App.2d 389, 395 [31 Cal.Rptr. 884].) Thus Smith’s impeachment was crucial to the defense. In the five minutes available to him to consider his client’s situation, the attorney could not exercise enough prescience to recognize that the informer might disappear before trial; that the defense might be stripped of protection against trial use of the witness’s unimpeaehed testimony; that the witness’s impeachment at the preliminary might be a “now or never” undertaking. True, five minutes were all the attorney sought. The very inadequacy of his request testifies to the seeming simplicity and the hidden complexity of the courtroom choice he was about to make.
 

 As it turned out, the hurried choice caused grave injury to the defense. When the absent informer’s transcribed testimony was read to the trial jury, the defense was left with little opportunity to exploit the informer’s fear of prosecution or hope of leniency. Instead of impeaching the witness out of his own mouth, the defendant’s trial counsel was forced to the flimsy expedient of establishing, through Smith’s transcribed admission in the Cole hearing, that he had used marijuana.
 
 [3]
 
 The defendant was deprived of his right to confront the witness, since the latter’s transcribed testimony had been given under circumstances in which there was no complete and adequate opportunity for cross-examination. The error was constitutional, involving a violation of the Fourteenth and Sixth Amendments. Had this key witness been impeached by thorough cross-examination, there is a reasonable possibility that the jury would have been moved to reject his testimony. The remaining evidence of guilt was highly circumstantial and (assuming its sufficiency) not compelling. The constitutional error
 
 *743
 
 was therefore prejudicial. (Cal. Const., art. VI, § 13;
 
 Chapman,
 
 v. California, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)
 

 Judgment reversed.
 

 Pierce, P. J., and Began, J., concurred.
 

 Respondent’s petition for a hearing by the Supreme Court was denied January 3, 1968.
 

 [1]
 

 At the time of defendant’s trial Penal Code section 686 provided:
 

 “In a criminal action the defendant is entitled:
 

 ( {
 

 “3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness . . . the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or can not with due diligence be found within the state ....’’
 

 Since the trial of this case, code amendments have spread the subject matter of former Penal Code section 686, subdivision 3, among Penal Code section 686, as amended, and Evidence Code sections 1290, 1291 and 240. See Witkin, California Evidence (2d ed. 1966) section 598.
 

 [2]
 

 Tliis observation is buttressed by statistics compiled by the Administrative Office of California Courts (see 1967 Annual Report, Judicial Council of California, part II, p. 264.) Municipal courts, sitting as magistrate courts, disposed of 48,601 felony filings during the 1965-1966
 
 *740
 
 fiscal year. Of these, 16,200 were disposed of without hearing, usually by voluntary dismissal by the prosecution or by the defendant’s guilty plea. 32,401 of these dispositions occurred after evidentiary hearings. Unpublished statistics in the file of the Administrative Office (of which we take judicial notice under Evidence Code section 452, subdivision (h) ) demonstrate that 29,584 of these hearings resulted in orders holding the defendants for trial, only 2,817 in dismissals. Statistics for the preceding fiscal year are comparable. A revealing although not yet published figure for 1966-1967 indicates that of 34,279 evidentiary hearings, 31,896 were uncontested in the sense that the defense produced no independent evidence whatever, either sitting in silence or confining itself to cross-examination of prosecution witnesses.
 

 [3]
 

 In closing argument to the jury, defendant’s trial counsel did what he could to exploit this admission. He said: “I don’t have the opportunity to cross examine Mr. Smith at all to ask him any questions whatsoever. My hands have been tied. . . . But if you want to draw inferences why wasn’t he, why wasn’t he charged? Perhaps some arrangements had been made whereby he was not to be charged, if he went out and gave evidence to convict other people. And if that is the case wouldn’t this man do everything in his power to clear himself?” After the verdict the defense made a new trial motion (which was denied) claiming post-trial discovery of witnesses who could establish that Smith, the informer, had been threatened with a felony prosecution.